**Anne Rowe, Plaintiff-Appellee, v. Donna Frazer, et al., Edna L. Hickey, Defendant-Appellant.**

Gen. No. 66–58.

Second District.

June 23, 1967.

Matthews, Jordan, Dean and Suhler, of Aurora, for appellant.

Gates W. Clancy, of Geneva, and Dreyer, Foote and Streit, of Aurora, for appellee.

MR. JUSTICE BURT delivered the opinion of the court.

This is an appeal by Edna L. Hickey, the host in driving her automobile, from a verdict and judgment in favor of Anne L. Rowe, her guest, for $11,400 entered in the Circuit Court of DuPage County against her and Donna Frazer, codefendant, driver of another car which collided with Mrs. Hickey's car. Donna Frazer did not appeal.

The original complaint was against Donna Frazer and Henry Rensman, the owner of the car which she was driving, in two counts charging ordinary negligence. Henry Rensman was later dismissed. Edna L. Hickey was made an additional party defendant and count three charging her with wilful and wanton misconduct was added to the complaint. Count three as finally amended was based upon five charges of wilful and wanton misconduct on the part of Mrs. Hickey: (1) excessive speed; (2) failure to have her vehicle under proper control; (3) failure to maintain a proper lookout; (4) proceeding straight ahead into an intersection while signalling an intention to turn; and (5) failure to sound the horn when it was reasonably necessary to do as to insure the safe operation of her motor vehicle. Defendant denied the charges.

Edna L. Hickey claims in her appeal that the trial court should have directed a verdict in her favor at the close of the case; that the verdict is against the manifest weight of the evidence; and that the court erred in denying the post-trial motion when these points were again raised. Appellee contends that the evidence, when viewed in the light most favorable to plaintiff, is sufficient to support the verdict of wilful and wanton misconduct on the part of the defendant Hickey, and that the verdict is not manifestly against the weight of the evidence.

There is little dispute about the facts. On June 8, 1963, about 1:30 in the afternoon, the defendant Edna

L. Hickey was driving her car in an easterly direction on Roosevelt Road and approaching the intersection of Roosevelt Road and Winfield Road in the country near Winfield in DuPage County. Winfield Road runs northerly and southerly and is paved with blacktopping about 24 feet wide in 2 lanes for traffic and Roosevelt Road runs easterly and westerly with 4 concrete or blacktopped lanes approximately 40 feet wide. Roosevelt Road is also known as Route 30. The weather was clear and the pavement dry. There were no business or residential structures at or near the intersection, except a filling station on the Northeast corner. Only one or two other cars were in the area on either road at the time and they did not figure in the accident.

Accompanying her in the right front seat was the plaintiff Anne Rowe, her sister-in-law, then 66 years of age. Mrs. Rowe resided in St. Petersburg, Florida, but was on a visit to the home of her brother and the defendant, Mrs. Hickey, at Wheaton, Illinois, located east of the intersection where the accident took place.

The two ladies had driven to Aurora to pay some bills of Mrs. Hickey and were on their way back to the Wheaton home at the time of the accident.

At scene of the accident there were no traffic control devices on Roosevelt Road, but there was a standard stop sign situated on the south side of Roosevelt for intersecting northbound traffic crossing Roosevelt. The sign was located about 50 feet from the south edge of Roosevelt Road.

Plaintiff and this defendant had entered Roosevelt Road about two miles west of the accident scene by turning right off a road known as Gary Mill Road.

At the time defendant Hickey's car was driven onto Roosevelt Road, the defendant Hickey actuated the turn signals on the car which flashed lights on the front of the car. Both plaintiff and defendant Hickey testified that at the time the turn was made to enter Roosevelt

371

Road an indicator on the dashboard flashed an intermittent light and also emitted a clicking noise. Both plaintiff and defendant Hickey testified that these signals ceased after the turn was completed and there were no further signals given within the car up to the scene of the accident.

Mrs. Hickey testified she travelled at about 50 miles an hour on Roosevelt Road until she came to a speed sign, limiting speed to 50 miles an hour, whereupon she slackened her speed to 45 miles an hour, and she maintained that speed until she applied the brakes just before the accident.

Plaintiff testified she observed the speedometer of the Hickey car about 500 feet from the accident scene and it registered 45 miles an hour. She stated she then looked to the right and saw a dense clump of bushes and trees, and observed the Frazer car a split second before the impact, feeling a sudden hard emergency application of the brakes, and feeling herself coming out of the seat toward the windshield.

Plaintiff testified also that she had not said anything to Mrs. Hickey about the manner in which she was driving, and was asked:

Q. "You had no fault to find with that?
A. "None whatever."

She also testified that the radio had been turned off; that she and Mrs. Hickey were in no hurry to get home; and that she was just looking at the scenery and talking up to the time of the impact.

She was also asked:

Q. "Going back before the accident occurred, at any time while you were riding in the car going east on Roosevelt Road, did you observe were there any turn signals on?
A. "No, I did not.

Q. "Did you observe any clicking noise?
A. "No.
Q. "Did you have occasion at any time to look at the dashboard of the car?
A. "Yes, I did.
Q. "Did you observe a flashing light?
A. "No, I did not."

Mrs. Rowe testified further that she did not see the Frazer car stop or pull out.

Donna Frazer, aged 20, who had been licensed to drive for six months, testified she was driving a 1962 Ford northerly on Winfield Road, intending to cross Roosevelt Road. When she came to the stop sign she stopped a foot or two south of the sign and looked east and west for other traffic. She stated that because of a bluff or bank on the south side of Roosevelt Road to her left and west of Winfield Road, on which 30 foot trees and bushes 3–4 feet high were situated, she had a view of only about 75′ to the west. She pulled forward to get a better view and stopped the car again about 6 feet from the south edge of Roosevelt Road. From this point she could see 200 to 300 feet to the west and observed a car 150 to 200 feet west of the intersection going 45 miles per hour. The car she observed, the defendant's, was proceeding in the outside eastbound lane, and this position of the car was confirmed by Mrs. Hickey. The Frazer car then started ahead into Roosevelt Road, and when she last observed the oncoming car it was 75 feet from her car, at which time she was either at the intersection or proceeding across. She testified that when she saw the Hickey car for the first time, it was signalling *a right* turn, the signal being given by a flashing light above the headlight on the Plymouth automobile. An employee of a Chrysler products dealership testified no Plymouth of the model driven by Mrs. Hickey had any light above the headlight, the turn signal light being situated below the bumper of the automobile.

373

The Chief of Police of the Village of Winfield, called on behalf of the plaintiff, testified he interviewed the defendant, Donna Frazer, at the hospital subsequent to the accident, at which time she told him the Hickey vehicle was signalling a turn to the *left* to proceed north.

The front end of the Hickey vehicle struck the left side of the Frazer vehicle, leaving debris 10 to 15 feet in diameter a foot or two east of the midline of Winfield Road.

The Chief of Police of Winfield testified the Hickey vehicle left skid marks 57 feet in length, and also testified that the Hickey vehicle after the collision was astraddle the center line of Roosevelt Road, facing in an easterly direction but slightly turned north. The length of the skid marks and the position of the cars was corroborated by an auxiliary police officer, called by the codefendant, who came to the scene from a gas station situated on the northeast corner of the intersection. This position of the car was also testified to by Mrs. Hickey.

Mrs. Hickey testified that after turning onto Roosevelt Road she remained in the outside right lane until she approached the scene of the accident.

She said there were no obstructions on the southwest corner of the intersection that prevented her from seeing Miss Frazer's car.

Mrs. Hickey also testified that when she first saw the Frazer car she was about 160–170 feet away. The Frazer car was stopped, but when she was 60 or 70 feet from Winfield Road she saw that the Frazer car was slowly moving forward onto the pavement and she realized that there might be an accident. When asked if she had continued to observe the Frazer car as she approached the intersection she answered "no." When she saw the Frazer car moving onto the highway Mrs. Hickey applied the brakes hard, but her car struck the

left front door of the Frazer car. She stated that she had not previously applied the brakes because she saw no reason to do so. Mrs. Hickey said the plaintiff said something to her when they were about 60 to 70 feet from the slowly moving Frazer car.

In the recent case of Klatt v. Commonwealth Edison Co., 33 Ill2d 481, pages 487–489, 211 NE2d 720 (1965), the Supreme Court said, "It has been previously observed that 'wilful and wanton misconduct has been defined in myriads of cases, each one reiterating or embellishing the phraseology of its predecessor. (Streeter v. Humrichouse, 357 Ill 234; Bartolucci v. Falleti, 382 Ill 168; Schneiderman v. Interstate Transit Lines, Inc., 394 Ill 569; Mower v. Williams, 402 Ill 486; Myers v. Krajefska, 8 Ill2d 322, 328.) One often quoted definition is that set forth in Schneiderman v. Interstate Transit Lines, Inc. (Supra), at page 583: "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by the exercise of ordinary care." In the recent case of Myers v. Krajefska, 8 Ill2d 322, this court refused to overrule that definition. The court noted that although there are some variations in the phraseology of the definitions of wilful and wanton misconduct in the cases, the basic concept as applied in the case law is the same, and since such conduct is usually a matter of degree, no hard-and-thin line definition could be made.' " Hering v. Hilton, 12 Ill2d 559, 562, 147 NE2d 311.

In the Klatt case the court found that Klatt, while driving around a long curve on a very rainy day of limited visibility, upon going off the pavement drove approxi-

mately 1,000 feet at 50–55 miles per hour without reducing his speed and then swerved back onto the pavement and into the oncoming traffic. The court said it believed that all reasonable men might properly denominate these actions as indicating wilful and wanton misconduct under the above quoted definition and that the question was accordingly properly one for the jury, citing Hering v. Hilton, (supra); Amenda v. Suits, 8 Ill 2d 598, 134 NE2d 811; Myers v. Krajefska, (supra).

██ ██ In the case now before us it is necessary to consider the evidence in the light most favorable to the plaintiff (Schneiderman v. Interstate Transit Lines, 394 Ill 569, 581, 69 NE2d 293) and in order for this court to set aside the verdict as to the defendant Hickey, an opposite conclusion as to that defendant must be clearly evident. Dursch v. Fair, 61 Ill App2d 273, 285–286, 209 NE2d 509; Payne v. Kingsley, 59 Ill App2d 245, 249, 207 NE2d 177; Deeke v. Steffke Freight Co., 50 Ill App 2d 1, 5, 199 NE2d 442.

 Each case depends upon its particular facts. The question of whether a personal injury has been inflicted by wilful and wanton misconduct is ordinarily a question of fact to be determined by the jury if there is any evidence in the record to support it. Schneiderman v. Interstate Transit Lines, 394 Ill 569, 583, 69 NE 2d 293. If there is not sufficient evidence to sustain a charge of wilful and wanton misconduct it is the trial court's duty to withdraw that charge from the jury's consideration. Ficht v. Niedert Motor Service, Inc., 34 Ill App2d 360, 366, 181 NE2d 386; Fosdick v. Servis, 40 Ill App2d 363, 367, 189 NE2d 538. All the circumstances must be taken into consideration. Ficht v. Niedert Motor Service, Inc., (supra). It is the legislative policy in Illinois that a driver is not liable to a guest for negligence. The liability is limited to injuries caused or contributed to by the wilful and wanton misconduct of the driver. (§ 9–201, c 95½, Ill Rev Stats 1961; Ficht

v. Niedert Motor Service, Inc., supra, page 367). A wanton act involves a conscious indifference to a known danger. It is based on the concept that under the known or plainly observable circumstances the doing or failing to do something will naturally and probably result in injury to another, and the defendant must have been aware of that situation and ignored it. Fosdick v. Servis, supra, at pages 367–368; Martin v. Cline, 15 Ill App2d 269, 273, 145 NE2d 505; Biela v. Messner, 18 Ill App2d 236, 241, 151 NE2d 406.

■ In the present case there are five charges of wilful and wanton misconduct and we will review the evidence as to each, in the light most favorable to plaintiff. First, as to speed, the undisputed evidence shows Mrs. Hickey was travelling at 45 miles an hour, within the speed limit of 50 miles an hour on a 4-lane preferential highway, in daytime, with little other traffic and nothing to cause any slackening of speed until she was within 160–170 feet of the Frazer car stopped at the intersection. She had not changed speed. She then saw the Frazer car moving onto the pavement, when about 60 or 70 feet away and then applied her brakes hard. This action, considering all the sourrounding circumstances, cannot be considered wilful and wanton misconduct.

■ Secondly, as to control, the evidence is undisputed that defendant Hickey was confronted with a sudden emergency by the intrusion of Miss Frazer onto the highway. Miss Frazer admitted that she pulled forward after stopping at the edge of the pavement and when she saw a car 150 to 200 feet west of the intersection coming at 45 miles an hour in the outside eastbound lane, she continued ahead. Skid marks behind Mrs. Hickey's car extended 57 feet, so she apparently tried to stop, and under all the circumstances did a creditable job of controlling her car. Clearly Miss Frazer was at fault, and although reasonable men might consider Mrs. Hickey

377

should have been able to stop sooner, clearly she was not guilty of wilful and wanton misconduct.

 As to lookout the same circumstances are pertinent. There was some evidence that trees and brush obstructed both drivers' views of each other, but even if the view were clear for Mrs. Hickey, it is apparent that even with the sharpest attention, there was not much Mrs. Hickey could be expected to be alerted for until Miss Frazer made her move. A sitting car at the edge of the road should not be a cause for emergency action and Mrs. Hickey could reasonably expect traffic on the intersecting street to yield the right-of-way. A traveller on a preferential highway has a right to expect a car approaching along a secondary street controlled by a stop sign to obey the stop sign and yield the right-of-way as required by law. Pomrenke v. Betzelberger, 41 Ill App2d 307, 312, 190 NE2d 522; Kneer v. Peoria-Rockford Bus Lines, 337 Ill App 389, 86 NE2d 159; Roberts v. Cipfl, 313 Ill App 373, 375, 40 NE2d 629.

There was conflict as to whether Mrs. Hickey's turn signals were operating at the time of the accident. Miss Frazer said they were flashing for a *right* turn, and also stated in a statement they were flashing for a *left* turn and she also stated they were located above the headlight, whereas a garage man testified that model Plymouth had its turn signals below the bumper. Both Mrs. Rowe, the plaintiff, and Mrs. Hickey, testified that the dashboard indicated they were not operative after the Hickey car entered Roosevelt Road.

 Assuming Miss Frazer did see a turn signal flashing, it would hardly indicate that Mrs. Hickey was consciously and wilfully operating her car incorrectly when neither she nor her guest, the plaintiff, were aware of its signal.

 In its most serious light, this charge could be only negligence. Wilful and wanton conduct is careless-

ness, but carelessness is not wilful and wanton misconduct. Bartolucci v. Falleti, 382 Ill 168, 175–176, 46 NE 2d 980; Clarke v. Storchak, 384 Ill 564, 52 NE2d 229.

 Finally, complaint is made of the failure to sound the horn by Mrs. Hickey. The purpose of sounding a horn is to warn a fellow user of the highway. Here, the undisputed evidence is that Mrs. Hickey was travelling 45 miles an hour when the emergency first arose, which means the car was travelling 66 feet a second. Mrs. Hickey said the Frazer car was about 75 feet from hers when she first saw it in motion.

She had about one second to act, in which time she was applying the brakes. Codefendant Frazer was already aware of the oncoming car, so the warning would have been useless. The statute (Par 212 of chapter 95½ of the Ill Rev Stats (1965)) provides that every driver of a motor vehicle should, when reasonably necessary to insure safe operation, give audible warning with his horn, but shall not otherwise use such horn upon a highway. Mrs. Hickey could scarcely be considered guilty of wilful and wanton misconduct for failure to blow her horn under the circumstances, when she was close upon Miss Frazer at the time when the latter made her move.

Construing all the evidence most favorably to plaintiff, together with all reasonable inferences arising therefrom, we find there is conspicuous lack of proof of any intentional wilful or wanton misconduct on the part of Mrs. Hickey, or any acts committed by her under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by the exercise of ordinary care. Klatt v. Commonwealth Edison Co., (supra, Page 488); Clarke v. Storchak, 384 Ill 564, 52 NE2d 229 (1944).

We therefore hold that under the law and evidence here the judgment of the court entered hereon should be reversed as to defendant Edna L. Hickey.

Reversed.

ABRAHAMSON and MORAN, JJ., concur.