THOMAS MADIGAN, Plaintiff-Appellant, v. BROWNING FERRIS INDUSTRIES et al., Defendants-Appellees.

Second District   No. 76-516

Opinion filed July 3, 1978.

RECHENMACHER, J., dissenting.

Sullivan, Smith & Hauser, of Waukegan, for appellant.

C. Barry Montgomery, Barry L. Kroll, and David A. Novoselsky, all of Jacobs, Williams & Montgomery, of Chicago, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

The plaintiff, Thomas Madigan, appeals from a judgment in favor of defendants, Browning Ferris Industries and Howard Schneider, in an action for personal injuries arising out of a collision between plaintiff's motorcycle and defendants' garbage truck.

Plaintiff, aged 21, was riding his motorcycle in an easterly direction on Lakehurst Road in Lake County, near Lakehurst Shopping Center, when the accident occurred. Lakehurst Road at that place was a five-lane highway with two lanes eastbound, two lanes westbound and a left turn lane for eastbound traffic near the scene of the accident. Plaintiff's testimony was that he was driving in the left hand lane just before 7 a.m. on September 4, 1975, on his way to Abbott Laboratories where he was employed. He saw defendants' garbage truck pull out from the parking area of the shopping center, drive across the right lane then proceed easterly ahead of him in the left lane of Lakehurst Road. Plaintiff stated he observed the truck's turn signals and they were not then operating. He

proceeded at a speed of approximately 25 to 30 miles per hour and caught up to the slower moving truck which was still traveling in the left lane of traffic. He testified that as he approached the truck to pass it in the right hand lane, its directional signals were not on but that at a point when he had proceeded into that lane and along the right side of the truck he saw a turn signal on its right front fender come on, indicating a right turn, and that at almost the same moment the truck turned towards him into his lane. Plaintiff applied his brakes, steered towards the curb and pushed himself off the motorcycle. The rear wheels of the truck passed over his lower body and he alleges injuries to his ankle, pelvic region and possible loss of sexual potency.

Ronald Bradke, a shopping center security guard, testified he was standing near the Golden Bear Restaurant about 300 feet from the scene of the accident and saw the truck pull out from the parking lot and turn east straddling the line between the inner left, eastbound lane and the left turn lane with portions of the truck in both of those lanes. He observed plaintiff's motorcycle coming up on the right side of the truck and the truck swerving to its right cutting off the motorcycle which tried to turn away from it but hit the curb and plaintiff left the bike. He immediately went to the scene and found the plaintiff lying on the pavement with his head two to three feet from the curb and his feet about six feet from the curb.

The truck driver, defendant Howard Schneider, testified he had collected trash from service area B of the shopping center, then, intending to go into service area C to collect another trash box, he drove the 25-foot-long garbage truck north on a service road to Lakehurst Road where he stopped at the stop sign and checked for traffic in both directions. Seeing none, he testified he activated his right turn signal and turned east onto Lakehurst Road heading towards the next service area. Since he intended to turn off Lakehurst Road into the entrance of service area C only 100 yards away, he allowed the right turn signal to remain on after he completed his first turn and while driving east on Lakehurst Road. The signal was manually operated and would not automatically go off after use. Mr. Schneider testified he did not look into his rear view mirrors while proceeding east on Lakehurst Road and that he drove at approximately 10 miles per hour. He stated he maneuvered his truck as soon as possible into the curb lane and that at a point 20 to 30 feet east of the place where he had entered Lakehurst Road had his vehicle wholly in the right hand lane of the road. He testified that upon reaching the intersection to service area C his turn signal was still activated and his truck in the right hand lane and he turned to his right into the entrance of that area. He further testified that he did not look into his side view mirror

or to the rear before making the turn nor had he looked in that direction at any time while on Lakehurst Road. He first realized there was something wrong when he felt movement to the rear portion of his truck and, looking back, he saw a man lying on the road whom he subsequently learned was the plaintiff, Thomas Madigan, whom he saw then for the first time.

On this appeal plaintiff makes several contentions of error committed by the trial court: (1) that the trial court erred in directing a verdict on the wilful and wanton count of the complaint and withdrawing it from the jury's consideration; (2) that the trial court prejudiced the jury in favor of defendant by asking a juror during voir dire if she could be "cold blooded" and removing her as a juror when she answered in the negative; (3) that the trial court improperly admitted certain exhibits without adequate foundation as to their accuracy; and (4) that the closing argument of defense counsel was improper and prejudicial to the plaintiff.

■■ In our view the first issue is determinative of this appeal. The trial court found that there was no evidence upon which the wilful and wanton count of plaintiff's complaint could be considered by the jury and directed a verdict in favor of the defendant as to that issue. It submitted to the jury only the issues as they related to ordinary negligence and the jury returned a verdict in favor of defendants. The issue presented to us is whether, applying the standard of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, to the evidence in this case, the trial court erred in directing the verdict in favor of defendants on that issue. The court there stated that "verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) In its view of the evidence the trial court determined that while the truck driver's conduct demonstrated an error in judgment on his part, he at no time conducted himself in a manner evidencing wilful and wanton conduct towards the plaintiff.

■■■ Wilful and wanton conduct was described in *Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583, 69 N.E.2d 293, 300, in this way:

> " 'A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness,

or carelessness when it could have been discovered by the exercise of ordinary care.' [Citations.]" (*Hocking v. Rehnquist* (1969), 44 Ill. 2d 196, 201, 254 N.E.2d 515, 518.)

It is also well established that whether specific acts or conduct of a party amount to wilful and wanton conduct is ordinarily a question of fact for the jury. (*Chmiel v. Pierce* (1973), 9 Ill. App. 3d 130, 133, 291 N.E.2d 862, 864; *Lessen v. Allison* (1960), 25 Ill. App. 2d 395, 166 N.E.2d 806.) In considering the evidence to determine whether a charge of wilful and wanton conduct ought to have been submitted to a jury neither the trial court nor a reviewing court may resolve conflicts in the evidence, decide what weight to apply to it or decide the relative credibility of the witnesses, but must view all of the evidence in its aspect most favorable to the plaintiff. Unless it can then be said that the evidence so overwhelmingly favors defendant that a wilful and wanton verdict based thereon would never stand the issue should be decided by the jury rather than the court. See *Bailey v. City of Decatur* (1977), 49 Ill. App. 3d 751, 364 N.E.2d 613.

The evidence was conflicting in the present case. If the fact-finder were to accept Schneider's version of the occurrence then it would appear he drove in the right hand traffic lane for some 100 yards with his turn signal operating and then, without looking, made his turn and struck plaintiff's motorcycle which was passing the truck by driving along the curbing. If, however, plaintiff's version of the events, as corroborated by the witness, Bradke, were believed to best represent the facts then it would appear that plaintiff was lawfully passing the truck while traveling in the right lane of the highway when Schneider, without looking, turned into him from the left lane without signaling his turn in sufficient time to permit plaintiff to avoid the truck which struck him.

The facts in *Hering v. Hilton* (1958), 12 Ill. 2d 559, 147 N.E.2d 311, are somewhat similar to our case. The defendant truck driver stopped at a stop sign, looked and saw plaintiff's approaching vehicle, but proceeded across the intersection believing he had sufficient time and distance to make it before that vehicle arrived. He did not. The court rejected the argument that defendant's conduct could not be considered wilful and wanton as it was a mere "error in judgment" as begging the question. It stated the query in such cases is whether defendant acted in disregard of dangers which should have been apparent to a reasonable man when he entered the intersection. The court pointed out that defendant need not have intended any harm should ensue or actually have known for sure that there would be a collision, but that it was sufficient if he had notice which would alert a reasonable man that substantial danger was involved and that he failed to take reasonable precautions under the

circumstances. This concept was described in *Rowe v. Frazer* (1967), 83 Ill. App. 2d 367, 377, 227 N.E.2d 781, 786, in these words:

"A wanton act involves a conscious indifference to a known danger. It is based on the concept that under the known or plainly observable circumstances the doing or failing to do something will naturally and probably result in injury to another, and the defendant must have been aware of that situation and ignored it. [Citations.]" See *Haskett v. Baker* (1971), 1 Ill. App. 3d 441, 274 N.E.2d 111; *Mower v. Williams* (1949), 402 Ill. 486, 84 N.E.2d 435; *Delany v. Badame* (1971), 49 Ill. 2d 168, 176-77, 274 N.E.2d 353, 357.

■■ Under the evidence, taken as we must in its aspect most favorable to plaintiff, defendant Schneider turned from the left lane across the right hand lane as he signaled and without looking to see whether another vehicle was passing his slow moving truck on that side. He had a duty to keep a lookout for other vehicles on the road, to change lanes only when it was safe to do so and to turn off the highway from the right lane rather than from the inner or left lane of traffic. A jury could conclude Schneider was aware of the potential danger implicit in his conduct and chose to disregard it. Under all of the circumstances demonstrated by the evidence we cannot say that it is overwhelmingly in favor of defendants and, therefore, the question of wilfulness and wantonness becomes one of fact which should be properly submitted to the jury.

■■ Because the judgment must be reversed and the cause remanded for a new trial, so that the issue of any wilful and wanton conduct on the part of the defendants can be submitted to a jury, we will discuss only briefly the other issues raised by plaintiff. In his preliminary statements to the panel jurors prior to the commencement of the voir dire examination the trial judge used the phrase "cold blooded" and referred to a jury as being like a computer. Plaintiff objected and the court correctly agreed not to use those terms again and did not do so. We do not regard this perhaps inappropriate description of a prospective juror's qualifications as being of great significance in the context of the trial. While jurors certainly must be objective and not approach the factual determination required of them on a personal basis, the court's attempt to inculcate them with a feeling of objectivity by the use of that language was merely an exaggeration of the correct attitude for the jurors to assume and not an invitation to them to distort the truth. We do not believe any prejudice resulted to the plaintiff by the approach taken by the trial court in this instance.

■■ Plaintiff also objected to the admission in evidence of a scaled architectural drawing of the Lakehurst Shopping Center which was introduced by the defense in cross-examination of the witness Bradke.

This was a matter within the discretion of the trial court and it was not abused in this instance. The exhibit contained working drawings of the buildings, roads, parkways and parking lots of the center and was introduced by an architect who prepared them. He testified that his firm constructed the shopping center pursuant to these plans and to the best of his knowledge they were followed as described thereon. Plaintiff objected to a lack of foundation for their admission contending the exhibit had been prepared long before the construction of the center and that the witness did not personally participate in that construction. Plaintiff, however, made no attempt to show the drawings inaccurately described the location on the date of the occurrence but only objected to the lack of proper foundation. We think the trial court properly admitted these exhibits in evidence.

The plaintiff also contends that prejudicial error occurred in argument when counsel for defendants suggested that the trial of the case was being held earlier than normal and sooner than was appropriate. Before arguments, the trial court had ruled that counsel could not make any statements concerning the accelerated date of trial which apparently had been brought about by reason of the economic hardship of the plaintiff. Counsel disregarded the court's ruling and on two occasions asked the jury to speculate as to why this case was going to trial when it did. On each occasion the court sustained the objection by plaintiff's counsel and directed the jury to disregard the improper comment.

It is difficult in such a situation to know whether the interjection of such irrelevant matters improperly influenced the jury. It has been held that where there is a sharp conflict in the testimony as to the issues of a case that improper conduct of counsel can be sufficient to require a reversal of the verdict rendered by a jury. (*Clayton v. Bellatti* (1966), 70 Ill. App. 2d 367, 216 N.E.2d 686.) Deliberate defiance of a court's limiting order, of course, is an aggravating factor to be considered. In this case, however, the improper conduct complained of is not likely to reoccur in a subsequent trial of this case.

For the reasons we have discussed the judgment of the Circuit Court of Lake County is reversed and the cause remanded for a new trial consistent with this opinion.

Reversed and remanded.

WOODWARD, J., concurs.

Mr. JUSTICE RECHENMACHER, dissenting:
I disagree with the majority's holding that, based on the facts as set forth in this record, the question of willful and wanton misconduct should be allowed to go to the jury.

While the general rule is that the question of whether the defendant's behavior was merely negligent or so reckless as to constitute willful and wanton misconduct is for the jury to determine, the law does not mandate that every allegation of willful and wanton misconduct must be submitted to the jury for determination. Nor is the trial court required to accept all of the inferences which the plaintiff may draw from his version of the facts as to the defendant's mental state or attitude. As our supreme court stated in the leading case of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 504-05:

> "Clearly, the constitution does, and judges should, carefully preserve the right of the parties to have a substantial factual dispute resolved by the jury, for it is here that assessment of the credibility of witnesses may well prove decisive. (See Ill. Const. art. II, sec. 5; Note, 107 U. Pa. L. Rev. 217.) But the presence of *some* evidence of a fact which, when viewed alone may seem substantial, does not always, when viewed in the context of all of the evidence, retain such significance. As the light from a lighted candle in a dark room seems substantial but disappears when the lights are turned on, so may weak evidence fade when the proof is viewed as a whole. Constitutional guaranties are not impaired by direction of a verdict despite the presence of some slight evidence to the contrary."

The rule for the direction of verdicts in Illinois is set forth in the *Pedrick* case as follows, page 510:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which *all of the evidence*, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (Emphasis added.)

In the case before us we must bear in mind that the *Pedrick* rule was established in a case involving an issue of simple negligence and the "evidence" in such cases differs qualitatively from that created by a directed verdict on the question of willful and wanton misconduct. Negligence is negative in character, willful and wanton misconduct requires a more clear and positive sort of wrongdoing. As the court said in *Ritter v. Ferenczi* (1973), 16 Ill. App. 3d 218, 223:

> " 'Wilful and wanton conduct is carelessness, but carelessness is not wilful and wanton misconduct.' *Rowe v. Frazier*, 83 Ill. App. 2d 367, 378-9, 227 N.E.2d 781."

The statement in 57 Am. Jur. 2d *Negligence* §103 (1971), sums this up:

> "Conduct to be wilful or wanton must be something more than negligence, since the term 'negligence' is used to express a failure to exercise ordinary or due care; conduct when characterized by wilfulness rather than by inadvertence transcends negligence and

is different in kind. Wanton misconduct is positive in nature, while mere negligence is materially negative."

This concept as to the qualitative differences between mere negligent behavior or failure to act with reasonable prudence and actual willful and wanton misconduct points up a crucial distinction between the evidence which requires a negligence issue to be submitted to the jury and that which so requires under a charge of willful and wanton misconduct. In the former case, a mere inadvertence, bad judgment, careless misjudgment or inattention caused by a momentary distraction, all essentially innocent in character but resulting in injury to another, can be the basis for submission of the negligence issue to the jury. The simple facts showing a failure to act with reasonable care, and consequent injury to another set up an issue of negligence for the jury, and an innocent state of mind and even positively good intentions are not sufficient to avoid the issue. But, in the case of a willful and wanton misconduct charge more than the pure physical facts themselves is required to establish the essence of willful and wanton misconduct—the character of the facts must transcend mere negligence and imply a certain state of mind—if not ill will or positive intention to cause harm, then at least conscious indifference to the danger to another, where such danger is known and readily apparent to the actor. Thus, the conduct of the person charged with willful and wanton misconduct must be inherently wrongful.

Running through the cases dealing with willful and wanton misconduct is the theme of consciousness or knowledge of impending danger by the person charged with such conduct and a reckless disregard of such impending danger. (See *Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569.) In *Hocking v. Rehnquist* (1969), 44 Ill. 2d 196, for example, our supreme court found the evidence even when viewed in its aspect most favorable to the plaintiff to be insufficient to sustain a willful and wanton count because the defendant did not realize the danger until it was too late to avoid it. The defendant in that case drove a truck equipped with tanks and asphalt spraying equipment through a narrow space left in the highway between a combine and an automobile, parked opposite each other on the highway. The defendant did not, apparently, see the plaintiff standing along side the automobile until too late and he drove right through the space between the two vehicles, striking the plaintiff and seriously injuring him. He admitted he did not blow his horn. In finding for the defendant on the issue of willful and wanton misconduct, the court said:

"From the record in this case, it cannot be said that there was a failure on the part of defendant Berberich to exercise ordinary care after having knowledge of impending danger. Viewing all the evidence in its aspect most favorable to plaintiff presents a scene

completely devoid of any indication of danger. The testimony of the driver of the camper [an eyewitness], as well as the testimony of Roy Perry [also an eyewitness] indicates that there was sufficient room in which to pass any supposed obstruction. Furthermore, even if the road were obstructed, the evidence does not evince such a want of care on Berberich's part as to constitute wilful and wanton misconduct. (*Cf. Pittmann v. Duggan,* 336 Ill. App. 502.) Berberich drove into a situation not of his own creation. He was called upon to react quickly in light of the conditions confronting him. There is nothing in this record to disclose that with knowledge of any existing danger he drove his truck with complete disregard for plaintiff's safety." 44 Ill. 2d 196, 201.

As the court said in *Rowe v. Frazer* (1967), 83 Ill. App. 2d 367, 377: "A wanton act involves a conscious indifference to a known danger. It is based on the concept that under the known or plainly observable circumstances the doing or failing to do something will naturally and probably result in injury to another, and the defendant must have been aware of that situation and ignored it."

Perhaps there could be no better *prima facie* case of recklessness than backing one's car up and striking one's own guest who was standing behind the car, ready to enter it. This is what occurred in the case of *Ritter v. Ferenczi* (1973), 16 Ill. App. 3d 218. The defendant and his wife picked up the plaintiff and her husband and drove them to another friend's house. At the end of the evening, the defendant testified, he reached his parked car first and turned on the engine and the lights, and waited for a moment and then backed up so as to move out from a high curb. In doing so he struck and ran over the plaintiff who was standing just behind the car. In affirming the trial court's action in removing the issue of willful and wanton misconduct from the consideration of the jury, the court said:

"When all of the evidence is viewed in the light most favorable to plaintiffs, there is an absence of proof that defendant was guilty of willful and wanton misconduct. It may be inferred from the evidence that defendant, when he looked in back of the car, failed to see Susanne when he should have seen her, and he failed to ascertain at the time he backed up his car where any of his passengers were. There is no evidence that defendant backed his car up with the intention to strike Susanne nor is there evidence that defendant had any knowledge of the impending danger. There is testimony that before defendant backed up, he started his motor, turned on his lights, looked to the rear and waited 10 or 15 seconds before releasing the brake. Viewing all the evidence in a light most favorable to plaintiff, we cannot say that there was proof that defendant failed to discover the danger through recklessness

or carelessness. The trial court was correct in taking the issue of willful and wanton misconduct from the jury." 16 Ill. App. 3d 218, 223.

Thus it appears that knowledge or consciousness of the impending danger to the plaintiff is a key element in determining whether a certain defendant's conduct is merely negligent or is willful and wanton and in many cases the willful and wanton issue has been withdrawn from the consideration of the jury because the evidence, even from the standpoint of the movant's opponent, did not establish such knowledge or consciousness of the imminent danger induced by movant's conduct.

Testing these principles by the evidence established at trial in the case before us we must try to determine whether, using the rule set out in the *Pedrick* case, evidence of willful and wanton misconduct is not such as to require the issue to be submitted to the jury. Since in judging the correctness of a directed verdict all of the evidence must be considered and viewed in its aspect most favorable to the movant's opponent, we must premise our decision on the plaintiff's evidence where such evidence is credible.

The complaint in count II alleged that the defendant acted in a willful and wanton manner in that he (1) turned his vehicle to the right without giving a signal of his intention to do so; (2) turned his vehicle from the inner or left lane, rather than from the right hand lane, as required by The Illinois Vehicle Code and (3) failed to keep a proper outlook for traffic on the roadway.

The defendant admitted at trial he did not look into his side view mirror while proceeding down the 300 or so foot stretch of Lakehurst Road, between Service Area Road B and Service Area Road C. He did, however, give a reasonable explanation of his failure to do so in that he was proceeding only 100 yards before making another right turn and as he had his right turn signal activated he did not think it necessary to keep a lookout in the back. This is a rational explanation and while there is some conflict in the evidence as to the precise point where the turn signal was activated, the explanation given by the defendant indicates a frame of mind or attitude which is much less than willful and wanton, although it is clearly compatible with a charge of negligence. As to the allegation that the defendant's truck turned from a left lane into a right lane, we must consider that in the light of the evidence most favorable to the plaintiff and for the purposes of this decision consider it as being established, that is, a given fact to consider in determining the correctness of the trial court's ruling on the willful and wanton count.

For the purposes of reviewing the directed verdict, therefore, we must begin with the assumptions that the defendant made a turn from the left

lane into or across the right lane without having checked for traffic behind him, which might be close to or along side of him on his right.

Under some circumstances, this combination of errors might constitute reckless or willful and wanton behavior, while under other circumstances it would be only negligence. Bearing in mind that there is a qualitative difference between mere negligence and willful and wanton conduct, the circumstances under which the defendant made the left to right turn would be very significant in determining whether or not the action of turning at that precise moment was willful and wanton misconduct. If, for example, we were to assume that the defendant turned from left to right, knowing the plaintiff was along side him and without giving any warning of his intention to turn, then we might say that at the very least there is a *prima facie* indication of willful and wanton or reckless conduct, which should be submitted to the jury for its verdict. This is because such circumstances show a conscious disregard or indifference to the safety of others—in other words, the requisite mental state for willful and wanton misconduct. Even if the defendant turned from left to right without knowing the plaintiff was along side or close behind him, but without looking in his mirror and without any warning, it would seem to be a question which should go to the jury for its assessment as to whether the defendant's conduct was willful and wanton.

If, however, the evidence shows that the defendant turned from left to right, not knowing of the plaintiff's presence along side or close behind his truck, but after giving warning of his intention to turn, is the character of the action the same? Clearly not because in that case the defendant did not act with reckless disregard for the safety of others or with conscious disregard of their imminent danger.

While it is not our function to weigh the evidence in deciding the issue of the directed verdict on the willful and wanton count yet, as indicated above, all the evidence may be considered and we are not bound to assume anything from evidence which is either inconsistent with testimony of the same parties or with the known physical facts, or is entirely illogical. This is not a hypothetical case, but involves an actual claim for hundreds of thousand dollars, including punitive damages of $100,000 and affecting the reputation of the defendant truck driver, all of which is very much involved with the willful and wanton count. In *Zank v. Chicago, Rock Island & Pacific R.R. Co.* (1959), 17 Ill. 2d 473, 476, our supreme court said:

> "While we are precluded from weighing the evidence, except as to equitable issues, to determine where the preponderance lies, (Ill. Rev. Stat. 1957, chap. 110, par. 92(3)(b),) where a motion is made in the trial court to direct a verdict, or for judgment

notwithstanding the verdict, or where the Appellate Court directs or enters such judgment, we may examine the evidence to determine whether, as a matter of law, there is any evidence in the record to prove the essential elements of the case. *Tucker v. New York, Chicago and St. Louis Railroad Co.*, 12 Ill. 2d 532; *Robinson v. Workman*, 9 Ill. 2d 420; *Illinois Central Railroad Co. v. Oswald*, 338 Ill. 270."

Emphasizing again that *attitude* is determinative in considering a charge of willful and wanton misconduct, we must examine the evidence which is most revealing on that point, that is the evidence with regard to the turn signal and the question of when it was activated. This is considered critical because if a person gives warning of an intended action he cannot be said to have acted with recklessness or with conscious indifference toward others in committing such act. The plaintiff testified at the trial, "[w]hen I was along side of it, I spotted the turn signal on and the truck moved instantly afterward," and in answer to the question, "[h]ad that turn signal been on prior to the time you saw it flash?" he answered, "[n]o." On cross-examination, however, to the question: "As you got up to the rear of the truck, did you look at the truck, did you look at the lights on it or anything like that to see if there was any turn signal on; do you have a specific recollection of doing that?" the plaintiff answered, "[n]o."

In his pretrial deposition, however, in answer to the question, "[d]id you notice the turning prior to observing the turn signal or did you observe the signal first?" the plaintiff answered, "[t]he signal first." And, to the question, "[h]ow much time elapsed from the time you observed the signal until the truck started to turn?" he answered first that he did not know, but "[i]t was a short time, less than thirty seconds."

In view of this rather equivocal evidence I think it would be unfair to make the assumption that the defendant failed to activate his turn signal until the plaintiff was one-third to one-half way past the truck, that is, approximately 14 to 19 feet from its front end. At a differential speed of 20 miles per hour between the truck and motorcycle, the cycle was passing the truck at about 30 feet per second and if the plaintiff was where he said he was when he first observed the truck's signal for a turn, and assuming the truck driver had to reach down and activate the turn signal, which he testified was down on the steering column, the plaintiff could not have had less than a full second to pass the truck, after the signal flashed, whether the plaintiff saw the signal the first instant it flashed or if the signal had been activated longer than the plaintiff estimated, before the turn. I will not attempt to decide where the plaintiff was when he first saw the signal flashing, nor how long it was on before the truck turned. But, in the face of the somewhat uncertain testimony of the plaintiff, and the physical

facts themselves, I am unable to assume for the purpose of deciding whether or not there was sufficient evidence of willful and wanton conduct to submit to the jury, that the defendant willfully and wantonly failed to give adequate warning to the plaintiff with his turn signal. The defendant, of course, stoutly maintained that he had activated his right turn signal at the time he pulled onto Lakehurst Road from Area Road B and that it was a hand operated signal which did not turn off after the turn was made. He stated he had left it on because he was going to turn again in about 100 yards. I reach no judgment as to the truth of this statement. It is not the court's function to make any finding on the truth or falsity of this contention, but as part of the total evidence it is more logical to accept it, than the testimony of the plaintiff that the defendant's turn signal came on exactly at the precise instant when the plaintiff was too far forward to stop and too far back to clear the truck. The rare coincidence could conceivably occur that the signal could be activated at the same instant that the plaintiff reached the point of no return with relation to the truck, but I do not think I am obliged to assume such a rare coincidence occurred for the purpose of this decision. I simply observe that I do not think the plaintiff's case on the question of the turn signal is such that I can assume the signal was too late to give him warning.

Leaving that question in more or less neutral status, we have the proposition that the defendant made a turn from the left lane into the right lane without checking his sideview mirror. While the plaintiff describes this turn as a "quick" turn and unexpected to him, that is a relative term depending to some extent on whether you were expecting it and whether you were in a position to observe the front of the truck the instant it began to turn. The truck was 27 feet long and the defendant testified it took 20 to 30 feet to straighten it out after a turn. The defendant had been operating this truck in the particular area where the accident occurred for several years and knew he was only going a half block or so, therefore, before he turned he knew exactly where he was going to turn. In view of these facts and the further fact that the defendant was extremely familiar with the area and had been making these stops and turns for years, there was no reason for him to make a "quick" turn in the sense of a short turn and I can only assume that the turn was "quick" in the sense that it was unexpected to the plaintiff. Again, I think it would be unfair to give the word "quick" an invidious meaning in order to present an aspect of willful and wanton misconduct. The defendant was certainly guilty of some negligence in not looking in his sideview mirror to check traffic behind him, which while probably not easy to do with such a long truck, would have been possible and might have alerted the defendant to the plaintiff's presence sooner. We must assume, also, that the defendant made a right turn from his left turn lane, but we do not know that he did

so without warning and there is some evidence that the warning signal was activated in time to have warned the plaintiff. At the very least this warning would have been incompatible with the deliberate ill will or recklessness that must be shown to exist for a charge of willful and wanton misconduct to stand. I think the evidence insufficient for such a charge and that the trial judge was correct in withdrawing it.

The plaintiff also complains of two instances in oral argument where defense counsel suggested that the trial of the case was being held sooner than was appropriate. In each instance the remark was promptly objected to and the objection sustained so that the suggestion was never developed beyond a single sentence. Plaintiff's counsel's immediate objection and the prompt ruling sustaining it, I think, were sufficient under the circumstances.

Plaintiff's other contentions were, in my opinion, properly treated by the trial court, as well as in the majority opinion.

As set forth above, I feel the trial court's rulings were not erroneous and I would affirm.