BRET L. LA POINTE, Plaintiff-Appellee and Appellant, *v.* JAMES H. BODDY Defendant-Appellee.—(CITY OF DEKALB, Defendant-Appellant and Appellee.)

Second District    Nos. 80-656, 80-665 cons.

Opinion filed August 11, 1981.—Rehearing denied September 10, 1981.

Norman H. Racine, of Racine and Racine, of Sycamore, for appellant.

Richard G. French and Dorothy F. French, both of French & Rogers, of Chicago, and Brassfield, Cowan & Howard, of Rockford, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

Bret L. La Pointe was injured when he was struck by a truck driven by James H. Boddy. He sued Boddy and the City of DeKalb, alleging negligence on the part of Boddy as well as willful and wanton misconduct in operating his vehicle and negligence and willful and wanton misconduct as to the City of DeKalb (hereinafter City) for improper maintenance of the highway on which the accident occurred.

The jury found Boddy not guilty but in a general verdict found against the City and awarded plaintiff a verdict of $225,000. The City appeals from the judgment against it and the plaintiff cross-appeals from the verdict for Boddy and from the trial court's order denying his motion to vacate the judgment against the City and to grant a new trial on the issue of damages only.

The issues as set out in the City's brief are as follows:

(1) Whether the City was guilty of willful and wanton misconduct as a matter of law;

(2) Whether the plaintiff was guilty of contributory negligence as a matter of law;

(3) Whether the plaintiff was guilty of willful and wanton misconduct as a matter of law;

(4) Whether the trial court properly denied the City's motion for a directed verdict on the question of willful and wanton misconduct of the City and whether submission of that count to the jury was prejudicial,

(5) Whether the trial court held correctly on certain objections to evidence and whether the jury's verdict was contrary to the manifest weight of the evidence, thus requiring a new trial.

The plaintiff was a student at Northern Illinois University at DeKalb on September 6, 1977, when the accident occurred. He lived in an apartment building near the university and was riding his bicycle south in the northbound lane of Annie Glidden Road (a City road) when the truck of Boddy, coming north on that road, caused him to leave the road and go onto the shoulder. The shoulders on Annie Glidden Road are loose gravel, and when the plaintiff went onto the shoulder with his thin-tire 10-speed bike, the bike skidded, throwing him onto the highway, where he was struck by Boddy's truck and injured so that he eventually had to have his right arm amputated.

Originally, only James H. Boddy, the driver of the truck, was named as a defendant in the complaint. About a year later, the first amended complaint was filed naming the City as a defendant, proper notice having been given to the City of the accident. This complaint was followed by a second amended complaint and then a third amended complaint adding a count of willful and wanton conduct against the City. The theory of the case against the City was that since Annie Glidden Road was within the city limits it was the responsibility of the City to maintain that road in a safe manner and that because of the gravel shoulders along the road and the difference in height between the pavement and the shoulder—at places as much as three to four inches—the road was not in a safe condition, therefore the City was negligent and its negligence was the proximate cause of the accident.

At the trial there was testimony that there was a difference in level

between the shoulder and the asphalt pavement, amounting to several inches—there is a dispute as to whether the difference was three to four inches or only two inches at the point of the accident. An expert witness testified for the plaintiff that Illinois Road Engineering Standards recommended that shoulders be asphalt or other suitable material. However, the road was not constructed by the City, and it had simply come under its jurisdiction after annexation. It was a township road when it was constructed. Whether it was the duty of the City to *improve* the construction was a question not determined. The plaintiff testified that he had ridden as far south toward his home as possible on the sidewalk but after the sidewalk ended—just south of a railroad viaduct—he decided to ride in the east lane—the northbound lane—of the highway in order to face traffic as he was apprehensive about vehicles coming up behind him when he could not see them. The weather was dry and clear and the visibility good. The plaintiff rode close to the east side of the road, trying to stay on the white line along the edge of the pavement. He was maintaining a speed of around 15 miles an hour and was carrying a knapsack with books in it on the handlebars on the right side. As the Boddy truck came toward him and did not swerve to the center of the road to give him room, the plaintiff decided he would have to leave the pavement. He rode off onto the gravel shoulder and immediately experienced difficulty controlling his bike. As the plaintiff described it in his testimony:

> "Well, as was my experience with 10-speed bikes, once your rear tire gets into loose material there's a lot of trouble in steering. When it came off the side of the road and the tire kicked out from the edge and hit that gravel, and at that point I wasn't in very good control of the bike."

At the close of all of the evidence, both defendants and the plaintiff filed motions for a directed verdict which were denied, and the case proceeded to verdict. The City submitted a special interrogatory as to the contributory negligence of the plaintiff, but the judge refused to give it. The case was submitted on a general verdict form and the jury returned a verdict for the defendant Boddy and found against the City, awarding the plaintiff $225,000 in damages.

We note that the parties have not raised or argued the applicability of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 1—101 *et seq.*) We are therefore not called upon to pass on its application to this case. *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 423-24.

■■ Where, as here, a jury is faced with assessing ordinary negligence or willful and wanton misconduct, and it returns a general verdict, it is presumed that the defendant has been found guilty of willful and wanton

misconduct. (*Lynch*, at 431.) That presumption may be rebutted if no willful or wanton misconduct has been proved as a matter of law.

■■ We see no basis in the evidence adduced at trial which justifies a finding of willful and wanton misconduct by the City of DeKalb. The evidence clearly established that there was a difference in level between the paved road and the shoulder. Whether this was two inches, as contended by the City, or between three and four inches, as contended by the plaintiff, at the scene of the accident, was not resolved by the testimony. Pictures taken by the plaintiff's grandfather were of no value in this respect, as he took the pictures at a spot not established as the scene of the accident due to a mistaken police report. Conceding, however, that there was a differential of around three inches between the paved road and the shoulder, we do not conceive of this as amounting to willful and wanton misconduct. The superintendent of streets testified that Annie Glidden Road was graded and graveled twice a year as a regular maintenance operation but that it was difficult to keep the gravel flush with the pavement due to rain, weather changes and the effect of vehicles knocking the gravel away from the edge of the pavement. He testified that a pothole or other emergency condition which developed in the shoulder was immediately repaired, but ordinary maintenance was done only in the spring and fall. The City's records showed that the usual operation of grading and graveling of the shoulders of the City's streets had been done in 1977, the year of the accident. While there was some testimony by an expert witness to the effect that a 24-foot bituminous paved road should have stabilized shoulders, "that is paved shoulders," he obviously was referring to the *design* of the road. In this case, the road had been designed and constructed as a township road years before it was annexed by the City. The failure to *maintain* the already existing gravel shoulders perfectly flush with the paved surface, therefore, does not on the basis of the expert's testimony reflect willful and wanton misconduct. Our supreme court has defined willful and wanton misconduct as being " 'intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others * * *.' " (*Hocking v. Rehnquist* (1969), 44 Ill. 2d 196, 201; *Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583.) In view of the difficulty of maintaining the gravel shoulder at all times flush with the pavement and the evidence of reasonable efforts to do so, the condition of the shoulder did not evidence either recklessness nor a conscious disregard for the safety of others, and we reach the conclusion that the City was not guilty of willful and wanton misconduct in this regard as a matter of law.

■■ This conclusion inevitably leads to a consideration of the question of the plaintiff's contributory negligence, since if the City was not guilty of willful and wanton misconduct, then the plaintiff must be free of

contributory negligence in order to recover from the defendant. Reviewing the evidence, even on the basis of the plaintiff's own testimony, we are forced to the conclusion that the plaintiff was indeed guilty of negligent conduct which proximately contributed to the accident. The plaintiff deliberately decided to ride on the east side of the highway, that is, to ride south in the northbound lane, and he is, of course, chargeable with the knowledge that he is required to obey ordinary traffic laws and to ride on the right side of the highway. (Ill. Rev. Stat. 1979, ch. 95½, pars. 11—1501, 11—1502.) His failure to obey the rules is *prima facie* evidence of negligence. However, there was substantive negligence as well in the plaintiff's conduct. In his testimony he admitted he was aware that the shoulder of the highway was composed of loose gravel and that he could not control his thin-tire 10-speed bike on such a surface at ordinary speeds. Yet his testimony was that he continued down the highway in the face of an oncoming truck at a speed of approximately 15 miles per hour and that he was maintaining that speed when he realized that the truck was not going to move over sufficiently to give him a margin of safety, thus making it necessary for him to go onto the shoulder. The plaintiff was aware or reasonably should have been aware that this might happen as a result of riding against traffic. There was a degree of negligence in ignoring this possibility and not preparing for it. The testimony of the plaintiff himself indicates his awareness of the possible danger as evidenced by the following:

"Q [Mr. Racine, City's attorney]: Would you, as you were riding that day, have expected to encounter some difficulty in going from the gravel shoulder back up onto the pavement?

A [Plaintiff]: Quite a bit. That's one of the reasons I didn't want to go off onto that gravel, was because I wouldn't be able to get back on without stopping and picking my bike up and putting it back on the road, or slowly traveling down the road looking for a place to get back on."

This testimony indicates an awareness by the plaintiff that he might have to get off the road. He was well aware of the difficulty of controlling his bicycle on a gravel shoulder if this was necessary, as indicated by the following testimony:

"Well, as was my experience with 10-speed bikes, once your rear tire gets into loose material there's a lot of trouble in steering."

Continuing his testimony, he explained:

"Well, on a car you turn the same way you skid, but you can't do that on a bicycle. And the only way you can try to come out of something like that is to turn the opposite way your rear tire is moving, which was toward the road."

The plaintiff was speaking here as a bicyclist experienced with the

behavior of 10-speed bikes—he had owned and ridden his bike for about eight years. That he appreciated the danger he would be in if he had to leave the pavement is apparent from the following testimony:

"It's difficult to ride more than five miles an hour on a road of that type. I distinctly stay off of gravel, and I was at times, well, especially in Las Cruces [where he formerly lived] I would sometimes ride on roads that were entirely gravel, because there's a lot of them there that are like that. In that case you have no choice, and you just go very slowly."

That the plaintiff took a calculated risk is evident from his testimony as follows in answer to the question why he would not ride on a gravel shoulder of a road with his bicycle.

"Well, they're quite a bit different than a lot of other models of bikes. They have very narrow tires, 60 to 70 pounds of pressure in there. A fairly small size rock has a large effect on a tire like that."

It appears from the above passages of the plaintiff's testimony that the proximate cause of the plaintiff's skidding and falling onto the paved road was the gravel along the shoulder of the road.

It is apparent from the above testimony that the plaintiff was aware of the danger of going off the road onto a gravel shoulder at anything more than a very slow speed or without stopping altogether, yet by his own testimony he was traveling approximately 15 miles an hour when he left the pavement and hit the gravel shoulder. Since the visibility was excellent—the testimony of the police officer, Borders, who witnessed the impact between the truck and the plaintiff, was that there was no difficulty in vision ahead—it is apparent that the plaintiff had an opportunity to see the truck, slow down and go onto the shoulder at a much safer speed if he had wished to do so as the truck was approaching.

Nor was the plaintiff unencumbered in managing his bike so as to give him maximum control. He testified that he was carrying a knapsack containing books on the handlebar of his bike on the right side. To what extent this weight on the right side of the handlebar contributed to the loss of control once the rear wheel hit the gravel shoulder we will not speculate on. However, it seems reasonable that it had some effect, and we must assume that he was aware of this added factor of difficulty in controlling his bike in the event he would have to leave the pavement.

From the foregoing, we cannot avoid the conclusion that the plaintiff was guilty of negligence which contributed to the accident. Having reached this conclusion, we do not think it necessary to consider the other issues raised by the City. In our opinion, the trial court should have directed a verdict in the City's favor on the willful and wanton count, and since we find the plaintiff was guilty of contributory negligence as a matter of law, based on his own testimony and the other established facts,

the trial court should have directed a verdict against the plaintiff on that ground.

In view of the lack of willful and wanton misconduct on the City's part and the undoubted contributory negligence of the plaintiff, the plaintiff cannot recover against the City, and we find it unnecessary to consider the other contentions raised in the City's brief.

The judgment against the City of Dekalb is therefore reversed.

The jury found Boddy not guilty of negligence, but the plaintiff's contributory negligence would not allow him to recover against Boddy in any event, and the plaintiff's cross-appeal against Boddy is accordingly dismissed.

The judgment of the circuit court of DeKalb County is reversed as to the City of DeKalb; the cross-appeal as to defendant Boddy is dismissed.

Judgment reversed; cross-appeal dismissed.

REINHARD and VAN DEUSEN, JJ., concur.