(No. 41836.—
ROBERT HOCKING, Appellee, *vs.* A. C. REHNQUIST *et al.,* Appellants.

*Opinion filed Dec. 19, 1969.—Rehearing denied Jan. 26, 1970.*

AULVIN & ALLISON, of Mt. Carmel, and CONGER & ELLIOTT, of Carmi, (JOHN L. AULVIN and IVAN A. ELLIOTT, JR., of counsel,) for appellants.

GOSNELL, BENECKI & QUINDRY, of Lawrenceville, (MAURICE E. GOSNELL, of counsel,) for appellees.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiff, Robert Hocking, filed suit in the circuit court of Wabash County against defendants seeking an award for personal injuries. The complaint charged defendants with negligence and with wilful and wanton misconduct. At the close of plaintiff's case, the trial court directed a verdict in favor of defendants on the wilful and wanton count and at the close of all the evidence submitted to the jury the

issue of negligence. A verdict was returned awarding plaintiff $34,000 damages. However, the jury returned a special interrogatory finding that plaintiff was not free from contributory negligence and the court accordingly entered judgment for defendants. On appeal, the Fifth District Appellate Court reversed (100 Ill. App. 2d 417) and we granted leave to appeal.

A disposition of the question before this court requires a review of the evidence as disclosed by the record. The accident took place shortly after noon on July 1, 1964, on a blacktop road running between Keensburg and Bellmont, Wabash County, Illinois. Plaintiff, a farmer, lives near the scene. Shortly before noon, plaintiff and Roy Perry, a boy of 14 years, left plaintiff's residence to combine a neighbor's wheat. Plaintiff proceeded westward in a combine and the boy followed in a small truck. The road on which they were traveling runs to the west from Keensburg to a point directly in front of plaintiff's residence and then curves to the northwest with a gradual decline from the curve. Plaintiff's residence is on the south side of the curve. A few feet to the east and on the north side of the road is a small barn. From a point 100 feet east of plaintiff's residence to a point 2,100 feet northwest of plaintiff's house there is a decline in the road of approximately 16 feet. At a point between 700 and 1,300 feet west of the Hocking house, the witnesses being in disagreement as to the exact location, plaintiff signaled Perry to pull off onto the shoulder of the road. Plaintiff parked the combine on the right shoulder and Perry parked the truck behind the combine. The evidence is at variance as to whether the combine was completely off the road or whether a portion of it extended over the blacktop. The testimony ranged from the combine being completely off the road to the fact that the upper portion of the header thereof extended 3 feet onto the road. Plaintiff motioned his wife, who was coming from the west, to drive her automobile onto the south shoulder. The front of the automobile was

approximately opposite the front of the combine. There was a dispute as to whether the car was completely off the road or from 2 to 4 feet on the road. Plaintiff walked across the road, which was approximately 20 feet wide, and talked to his wife through the driver's window. During this time a pickup truck, with camper attached, safely passed through traveling east. The camper was 6 feet 7 inches wide. The driver testified that at the time he passed through, plaintiff was standing by the car with his hand on the car door facing the Hocking house. He also testified that he had no difficulty in passing through at that point and that "I never blowed my horn or nothing. I just drove on through."

Defendants' truck, driven by an employee, Neal Berberich, approached from the east. The truck was equipped with a tank and asphalt spraying equipment. The widest portion of the truck was 7 feet 10 inches and on the day in question it was filled with oil and had a total weight of about 23,000 pounds.

Berberich testified that when he had reached the high point in the road just east of the Hocking residence, he was able to see the top of the combine down the road but unable to determine its exact location on the road from that distance. He negotiated the turn in front of the Hocking house and stated that he saw the combine extended onto the blacktop. He pulled out into the center of the road to pass the combine. He stated that about 2 to 4 feet of the combine extended over the blacktop. Berberich further testified that he first saw the car after he had pulled out into the center of the road, and that at that time he was approximately 300 to 350 feet from the combine; that 18 inches to 2 feet of the car extended onto the road; that he did not sound his horn because he was afraid it might startle plaintiff; that when he first saw the automobile and combine he took his foot from the accelerator but then applied it to maintain proper control of the truck; that he applied his brakes but he knew that he could not stop in time so he released them;

and that when he passed through the obstruction he was traveling at about 35 m.p.h. in the center of the highway.

Roy Perry, who had been watching the truck come down the road, testified that it was traveling in the middle of the road or a little to the left; that his attention had been directed to the vehicle because of the "roar" of the engine and that he did not warn plaintiff because he "didn't think there was any need of it. There was plenty of room."

As Berberich passed through the obstruction the left rear fender of the truck and a bar supporting the asphalt spraying equipment struck plaintiff, hurling him into the air and down to the pavement, resulting in severe injuries. Berberich testified that as he passed through the obstruction he glanced into his side-view mirror and saw plaintiff step back into the rear fender of the truck. There is no evidence in the record to indicate that defendant swerved, skidded or otherwise lost control of the truck.

Plaintiff's wife testified that her husband was standing next to the car at the time defendant's truck passed; that when Berberich came through she was looking into her purse for bills to give to her husband; that she heard the roar of the truck and her husband say, "Oh no"; and that she looked through the rear-view mirror and saw her husband landing on the pavement behind her car.

Two questions were presented to the appellate court for review: (1) whether the trial court was correct in directing a verdict for defendants on the wilful and wanton count; and (2) whether the trial court was correct in setting aside the jury verdict and entering judgment for defendants because of the special interrogatory, or, in the alternative, whether plaintiff was entitled to a new trial. These are the issues before us.

In *Pedrick* v. *Peoria & Eastern R.R. Co.,* 37 Ill.2d 494 at 510, this court stated that "verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favor-

able to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." In the instant case when all of the evidence presented is viewed in its aspect most favorable to plaintiff it is undeniable that there is a total lack of proof of wilful and wanton misconduct on the part of Berberich. "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by the exercise of ordinary care." (*Schneiderman* v. *Interstate Transit Lines, Inc.,* 394 Ill. 569, 583; *Hering* v. *Hilton,* 12 Ill.2d 559, 562; *Klatt* v. *Commonwealth Edison Co.,* 33 Ill.2d 481, 488.) From the record in this case, it cannot be said that there was a failure on the part of defendant Berberich to exercise ordinary care after having knowledge of impending danger. Viewing all the evidence in its aspect most favorable to plaintiff presents a scene completely devoid of any indication of danger. The testimony of the driver of the camper, as well as the testimony of Roy Perry indicates that there was sufficient room in which to pass any supposed obstruction. Furthermore, even if the road were obstructed, the evidence does not evince such a want of care on Berberich's part as to constitute wilful and wanton misconduct. (*Cf. Pittman* v. *Duggan,* 336 Ill. App. 502.) Berberich drove into a situation not of his own creation. He was called upon to react quickly in light of the conditions confronting him. There is nothing in this record to disclose that with knowledge of any existing danger he drove his truck with complete disregard for plaintiff's safety. The fact that he was driving in the center of the road is insufficient in itself to sustain a charge of wilful and wanton misconduct (*cf. Bartolucci* v. *Falleti,* 382 Ill. 168), and, under the facts presented here, was perhaps his

safest course of action. Accordingly, we find that the trial court was correct in directing a verdict for defendants on the wilful and wanton count.

It is next contended that one of defendants' tendered instructions, as well as the special interrogatory, was improperly submitted to the jury. The special interrogatory complained of was as follows: "The jury will from the evidence and under the instructions of the court answer the following question on the form handed you herewith for that purpose by writing under the question either 'yes' or 'no' and each Juror will sign his or her name following said answer on said form:

Question: Do you find from the greater weight of the evidence in this case that Plaintiff was free from negligence at and immediately prior to the occurrence involved in this cause, which proximately caused or contributed to cause his injury?"

Plaintiff contends that the phrase "free from negligence" implied that the standard to be applied to him was greater than the standard of ordinary care and also created an inconsistency with other instructions. We believe this construction to be misplaced. Separate instructions were given to the jury defining negligence, ordinary care, proximate cause and contributory negligence. As did the appellate court, we find the tendered interrogatory neither imposed a greater standard on plaintiff nor was inconsistent with the other instructions given. However, unlike the appellate court, we do not feel that this interrogatory was confusing or ambiguous. This interrogatory, as we read it, merely propounded the question of whether at the time of the occurrence plaintiff was free from negligence which proximately caused or contributed to cause his injury. Accordingly, we hold that the giving of this special interrogatory was not error.

Finally, it is plaintiff's contention that defendants' instruction No. 5 was improperly given. It recited a portion

of section 75 of the Uniform Act Regulating Traffic (Ill. Rev. Stat. 1963, ch. 95½, par. 172) : "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway." The appellate court found this instruction to be erroneous in two respects. First, they found no evidence in the record to support this instruction; and, second, in giving an instruction based on this particular statute, they held the trial court shall have included subsection (d) thereof which also imposes a duty of due care on the driver of the vehicle. We do not agree with this approach.

It was defendants' theory throughout the trial that plaintiff was struck and injured when he turned and stepped into the truck. Defendant Berberich himself testified that he saw plaintiff step back and into the truck. It was certainly inferrable by the jury that plaintiff, having finished his conversation with his wife, turned to cross the road to the combine and in so doing stepped into the side of the truck. We therefore find there was sufficient evidence in the record to support this instruction. However correct the appellate court may have been in requiring the addition of subsection (d) of the above statute to the instruction, we hold that plaintiff waived this specific objection. Inasmuch as plaintiff "did not assert the grounds now urged against the particular instruction at the instruction conference, his objections thereto are not well taken when interposed for the first time on review." *Saunders* v. *Schultz,* 20 Ill.2d 301, 314.

The action of the trial court was correct. The judgment of the appellate court is reversed and the judgment of the circuit court of Wabash County is affirmed.

*Appellate Court reversed; circuit court affirmed.*