IDA PUMO, Plaintiff-Appellant, *v.* RICHARD FOLTYNEWICZ, d/b/a Richard's Lawn and Garden Center, Defendant-Appellee.

Third District   No. 79-489

Opinion filed March 26, 1980.

Eric B. Deobler, of Peter F. Ferracuti & Associates, of Ottawa, for appellant.

T. Donald Henson and Robert M. Hansen, both of Herbolsheimer, Lannon, Henson & Duncan, P. C., of La Salle, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal by the plaintiff, Ida Pumo, from a judgment, following a jury trial, in favor of the defendant, Richard Foltynewicz, doing business as Richard's Lawn and Garden Center. The underlying action was for damages due to personal injuries received by the plaintiff in a fall on the defendant's business premises.

At the trial the plaintiff testified that on April 28, 1977, she went to Richard's Lawn and Garden Center in her car after taking her friend to a beauty shop. She stopped the car in front of the defendant's place of business and walked around the front of the car, a 1974 Oldsmobile 98, and another two or three feet, before she stepped on the dishpan which caused her to fall.

After she walked around the front of her car, she fell immediately in front of the defendant's building. In falling, the plaintiff landed on her left knee and head. The weather was raining, drizzling and cold, and she stated the dishpan was located where an eavesdrop in the overhang in front of the store ended.

Although the plaintiff admits she was not looking where she was walking, she describes the dishpan as being gold, 12 to 16 inches square and approximately six inches deep. After the accident, she did not notice anyone take the dishpan inside and did not notice if it was still on the sidewalk when she left because she did not look for it. In addition, when she saw her evaluating physician, Dr. Wilson, the plaintiff did not inform him that she had fallen on a dishpan.

The defendant testified that when he went outside to where the plaintiff had fallen, there was no dishpan present, and an independent witness, Bernard Fredericks, testified that when he walked out to the plaintiff, he looked and saw nothing in the vicinity of the sidewalk. This testimony is supported by that of the defendant's wife, Patricia Foltynewicz, who stated that there was no dishpan on the sidewalk in front of the building when she entered, approximately 10 minutes before the plaintiff left.

The defendant testified he had a dishpan on the premises but that it was inside and he collected rain water, not on the outside, but in a garbage can kept inside under a leak that came in through the roof. The defendant's wife claimed she knew of no dishpan at all on the premises even though she worked there several hours a day. There is no dispute that there was no soft water tank on the premises, and Foltynewicz stated that rain falls off at the end of the trough in front of the store.

There is no dispute in the evidence that the plaintiff actually fell and that the defendant assisted her to come inside the store and sit down. However, once inside the store, the plaintiff, according to her testimony and that of Fredericks, removed the shoe from her left foot because it was

swollen. However, the defendant and his wife testified that the plaintiff did not remove the shoe.

In addition, the defendant and his wife testified that the plaintiff stated that she wished she had not worn the shoes she had on. Fredericks heard the plaintiff say "if she had wore [sic] her good shoes instead of these sons-of-bitches, she wouldn't have fell [sic] down." Fredericks noticed that the plaintiff's shoes had no straps at the heels and only a strap or two over the toe. The defendant's wife also described the shoes as being like beach clogs, with just a strap. The plaintiff testified she owned no such shoes as "beach clogs" and denied ever making the statement regarding her shoes.

The plaintiff attempted to demonstrate a bias on the part of witness Fredericks by bringing out the fact that he had refused to give a statement to plaintiff's counsel over the telephone prior to trial. Fredericks testified that he refused to give such a statement because he felt the plaintiff's counsel had no right to such a statement and he thought somebody was trying to trick him. He also testified that he did not talk at all with the defense counsel regarding his testimony.

The evidence as to injuries was virtually uncontroverted. Dr. Wilson, an orthopedic surgeon, testified the plaintiff's kneecap was fractured into several pieces.

The only issue raised, however, concerns argument by the defense counsel. In his opening statement, apparently without objection, he told the jury, "This is a husband and wife, a small time organization, both Mr. and Mrs. Foltynewicz work at Libbey Owens Ford, and this is another job they have to supplement their income." On the other hand, the plaintiff's counsel also educed the information that the Foltynewiczes worked at Libbey Owens Ford while questioning the defendant under section 60 examination (Ill. Rev. Stat. 1977, ch. 110, par. 60). In addition, the plaintiff seems to complain that, in questioning the defendant under section 60, in response to the simple question of whether the defendant owned the premises, the defendant answered, "Well the First Federal and I, they own it till I pay it off." However, the plaintiff's attorney made no motion to strike the answer as being nonresponsive to the question.

The plaintiff has, it seems, in her statement of facts, attempted to somehow relate the above statements to a statement made during closing argument, but the failure of the plaintiff to preserve any error which might have occurred with regards to the above statement limits this court's consideration to the only issue properly raised.

During closing argument, the defense counsel made the following argument concerning the credibility of the witnesses:

"* * * So [the plaintiff's attorney] can sit here and apothosize [sic] all night about the reasons why that dishpan should have been

there, but you have to decide based upon what you heard here. And how do the parties line up on that? Well obviously we have Mrs. Pumo who said it was there. On the other hand we have Mr. Foltynewicz saying it wasn't there. Whom do you believe? [The plaintiff's attorney] was correct, you look to the instructions, you look to the credibility of the witnesses. What interest, motivation, bias do they have in testifying one way or the other? I think Mrs. Pumo has a motivation for testifying the way she did. She has an interest in doing it. You know what it is, very obvious, isn't it? If you buy her story you have to give her $18,500.00 or less. She has a monetary stake in it. In a similar vein you can say, but Mr. [defense attorney], doesn't your client have a monetary interest in it? You bet he does. You have to sell a lot of lawnmowers to pay that type of verdict.

    \* \* \* So sure, to the extent he is trying to protect his own, he has a motivation. To the extent she is trying to obtain something she has a motivation, so you can weigh that." (Emphasis added.)

The plaintiff's objection to the underlined portion of the above-quoted argument was overruled. Therefore, after the jury returned its verdict for the defendant, the plaintiff filed a post-trial motion for a judgment notwithstanding the verdict or for a new trial based on the prejudicial remarks of defense counsel during closing argument. The plaintiff's motion was denied and this appeal was instituted.

■■ ■ There is little doubt that, in an action for damages, an argument referring to the financial status of a party may be reversible error. (*Panos v. McMahon* (1974), 23 Ill. App. 3d 776, 320 N.E.2d 185. See also *Delany v. Badame* (1971), 49 Ill. 2d 168, 274 N.E.2d 168.) While we do not approve of the statement made by the defense counsel in the case at bar, we do not believe that this one, isolated statement was so prejudicial as to require a reversal and remandment. The Illinois Supreme Court has stated:

> "Plaintiff is not entitled to an absolutely error-free trial. [Citation.] 'Where it appears that an error did not affect the outcome below, or where the court can see from the entire record that no injury has been done, the judgment or decree will not be disturbed.' [Citation.] The trial taken as a whole was fair, and none of plaintiffs' allegations of error merit reversal of the jury's verdict." (*Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 559, 356 N.E.2d 779, 787. Accord, *Tripp v. Bureau Service Co.* (1978), 62 Ill. App. 3d 998, 379 N.E.2d 324).

In the case at bar, the plaintiff admitted she was not looking where she was walking. And while there was a dispute between the parties as to the presence of the dishpan, the only disinterested witness testified that he

saw no dishpan. In addition, when explaining to her evaluating physician how the incident which caused the injuries occurred, the plaintiff made no mention of tripping over a dishpan.

Furthermore, the defendant, his wife and the only disinterested witness heard the plaintiff blame the incident on her shoes shortly after it occurred. While the plaintiff denies making such a statement, the testimony of the others seems to be somewhat corroborated, if only slightly, by the plaintiff's, and Fredericks', testimony that after the incident the plaintiff removed her shoe.

In this case, the trial taken as a whole was very fair and there is certainly more than sufficient evidence to support the jury's verdict. The one, isolated comment of the defense attorney during closing argument is not so prejudicial to the plaintiff as to require reversal of that verdict. The error of the trial court in failing to sustain the plaintiff's objection is, therefore, harmless.

Accordingly, the judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.