GEORGE NEUMAN, Adm'r of the Estate of John J. Neuman, Deceased, Plaintiff, *v.* THE CITY OF CHICAGO *et al.*, Defendants.—(The City of Chicago *et al.*, Counterplaintiffs-Appellants, *v.* Northwest Hospital, Counter-defendant-Appellee.)

First District (2nd Division)   No. 81—1703

Opinion filed November 30, 1982.

Stanley Garber, Corporation Counsel, of Chicago (Peter Fitzpatrick, Special Assistant Corporation Counsel, and Richard F. Lee, of counsel), for appellants.

Hinshaw, Culbertson, Moelman, Hoban & Fuller, of Chicago (Stanley J. Davidson, E. Michael Kelly, and John G. Langhenry, Jr., of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

The principal issue presented by this appeal is whether defendant-counterdefendant Northwest Hospital (Hospital) "is responsible for the consequences of [its] own wrong, and if [defendant-counterplaintiff City of Chicago is] compelled to pay damages which ought to have been paid by the [Hospital, the City] may recover from [it]." *Gertz v. Campbell* (1973), 55 Ill. 2d 84, 90, 302 N.E.2d 40.

For the reasons hereinafter set forth, we reverse and remand the cause.

On October 14, 1977, plaintiff, George Neuman, administrator of the estate of John J. Newman, deceased, initiated a three count wrongful death action against the City, two City police officers, Philip Onesto and William Sims (collectively "City"), and the Hospital. Count I was directed against the City and alleged that decedent was handcuffed, arrested, and apprehended by the named officers. The officers, while acting within the scope of their duty as agents of the City, allegedly committed wanton acts of violence in that they: shot the deceased when they knew or should have known that it was totally unnecessary because he was handcuffed; used a gun which contained bullets that had been doctored and altered and thereby intended to inflict excessive destructive injury; and exercised unnecessary violence in shooting the deceased, showing a total disregard for the safety and care of the public. The City was charged further with having failed to discharge Onesto from the police force after having been repeatedly notified of his vicious propensities and the likelihood of inflicting unnecessary and excessive violence on members of the public. Finally, count I alleges that defendants' shooting of the plaintiff's intestate ultimately caused or contributed to his death at the Hospital.

Count II was directed against the Hospital, to which decedent was brought for emergency treatment. In essence, the Hospital was charged with having committed eight specified negligent acts or omissions in connection with the failure to give decedent necessary blood transfusions and other medical care which resulted in his death. Count III repeated the same allegations of medical malpractice asserted in count II but added that these acts were committed "wantonly." Count II prayed for, *inter alia*, $500,000 in pecuniary damages and punitive damages of $1,000,000. Count III prayed for $1,000,000 in punitive damages.

The Hospital successfully moved to strike the prayers for punitive damages from counts II and III of the complaint on October 15, 1979, and the circuit court ordered that the judgment would not prejudice

plaintiff's prayer for compensatory damages.

On March 14, 1981, the City filed a counterclaim against the Hospital, incorporating by reference, *inter alia*, the same allegations of negligence and wanton misconduct set forth in paragraph 2 of counts II and III, respectively, of the underlying complaint. The counterclaim further alleged that: the specified negligent and wilful acts or omissions alleged against the agents and servants of the Hospital were not committed in concert with the City; the City did not control the activities of the Hospital in connection with these acts; and, but for the Hospital's negligent and wilful acts or omissions, decedent would have recovered from his injuries.

The Hospital moved to dismiss the counterclaim, principally on the basis that the City may not seek equitable apportionment of damages because it was charged with intentional, wilful and wanton conduct by plaintiff. On June 19, 1981, the circuit court granted the Hospital's motion.

A motion to dismiss a counterclaim admits that all facts properly pleaded are true. (*City of Chicago v. Loitz* (1975), 61 Ill. 2d 92, 93, 329 N.E.2d 208; *Jackson v. Burlington Northern, Inc.* (1980), 84 Ill. App. 3d 967, 968, 405 N.E.2d 805; *American Mutual Reinsurance Co. v. Calvert Fire Insurance Co.* (1977), 52 Ill. App. 3d 922, 924, 367 N.E.2d 104, *cert. denied* (1978), 436 U.S. 906, 56 L. Ed. 2d 404, 98 S. Ct. 2238.) A cause of action should not be dismissed on the pleadings unless it manifestly appears that no set of facts can be proved upon which relief can be granted. (*Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 305, 312 N.E.2d 259.) The City denied all material allegations contained in the underlying complaint and their counterclaim continues to deny these allegations. The City's counterclaim raises allegations against a codefendant, not against plaintiff. Plaintiff did not join in the Hospital's motion. Under these circumstances and in light of the above-cited principles, the Hospital's contention, that in reviewing the sufficiency of a counterclaim all well-pleaded allegations contained in the underlying complaint must also be taken as true, is without merit.

The City maintains that the counterclaim states a valid cause of action for equitable apportionment as established in *Gertz v. Campbell*, and does not rely on "An Act in relation to contribution among joint tortfeasors" (Act) (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*). In *Gertz*, plaintiff alleged that he was injured by defendant's negligent operation of an automobile. Defendant filed a third-party complaint against the physician who treated plaintiff after the accident seeking indemnity for any damages attributable to the physician's

malpractice. Applying principles of "conscience," the supreme court allowed the third-party complaint to stand, upon the "principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him." *Gertz v. Campbell* (1973), 55 Ill. 2d 84, 90, quoting with approval from *Herrero v. Atkinson* (1964), 227 Cal. App. 2d 69, 74, 38 Cal. Rptr. 490, 493.

The Hospital attempts to distinguish *Gertz*, in part, on the ground that there the malpracticing physician was not named in the original lawsuit by plaintiff; therefore, the original tortfeasor stood to pay damages for the entire extent of the injury while the physician paid nothing. The Hospital argues that here, because it is a named party, the jury will be asked to return separate verdicts and that the jury will apportion the damages between the City and the Hospital, even without a counterclaim. This distinction fails, however, since the City can be held liable for any mortal injury inflicted by the Hospital whether or not separate verdicts are returned. *Chicago City Ry. Co. v. Saxby* (1904), 213 Ill. 274, 277, 72 N.E. 755.

More importantly, the Hospital emphasizes that the original tortfeasor in *Gertz* was alleged to have committed ordinary negligence, but the City here is accused of wilful or intentional misconduct thereby precluding it from seeking equitable apportionment. The Hospital urges that *Gertz* should not be extended to a city charged with wantonly shooting a handcuffed person with a gun containing bullets intended to inflict excessive destructive injury.

The Hospital correctly asserts that an intentional tortfeasor is without standing to invoke equity and request a court to shift the burden of the loss to another. (*Cf. Wanack v. Michels* (1905), 215 Ill. 87, 94-95, 74 N.E. 84; *Turner v. Kirkwood* (10th Cir. 1931), 49 F.2d 590, 595-96; *Skaja v. Andrews Hotel Co.* (1968), 281 Minn. 417, 423, 161 N.W.2d 657, 661.) This court cannot presume, however, that any of the allegations contained in the underlying complaint will be proven, including those alleging that the City acted intentionally. A " 'wilful or wanton' " injury may either have been intentional *or* the act may have been committed under circumstances exhibiting a reckless disregard for the safety of others. (*Hocking v. Rehnquist* (1969), 44 Ill. 2d 196, 201, 254 N.E.2d 515.) Whether wilful and wanton conduct has been proven in any given case demands close scrutiny of the facts as disclosed by the evidence and, while the rule of law remains constant, the facts to which the law is applied always present unique circumstances. (*Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 430, 412 N.E.2d 447.) The City may be found guilty of reckless rather than in-

tentional misconduct, and thereby would have standing to maintain its action for equitable apportionment. Because of the necessity to closely peruse the facts of each case, whether plaintiff has proven intentional wrongdoing on the part of the City must await trial. See *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469, 415 N.E.2d 1015; *Lynch v. Board of Education.*

■■ The *Gertz* court stressed several factors concerning the relationship between the tortfeasors in that case, among which were that: (1) the original tortfeasor was liable at law for the subsequent negligence of the other; (2) the parties were not joint tortfeasors; (3) they did not act in concert; (4) the wrongful conduct and injuries were sustained at different times; and (5) the original tortfeasor lacked control over the acts of the subsequent tortfeasor. (*Cf. Harris Trust & Savings Bank v. Ali* (1981), 100 Ill. App. 3d 1, 14-15, 425 N.E.2d 1359.) Many of the foregoing considerations are present here to favor the City's right to indemnity. The City is liable for the fatal aggravation of injury caused by the Hospital (*Chicago City Ry. Co. v. Saxby* (1904), 213 Ill. 274, 277); yet it had no control over the Hospital's misconduct. The City did not act in concert with the Hospital. The wrongful conduct and the injuries were sustained at different times. If at trial, the evidence demonstrates that "reckless" as opposed to "intentional" misconduct was committed by the City, then the *Gertz* factors favoring the City's right to apportionment override countervailing considerations.

■■ The Hospital argues that under traditional equitable apportionment analysis, death is indivisible, and therefore, where the ultimate injury is death, equitable apportionment will not lie, citing *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 614, 422 N.E.2d 979. In that case, decedent's wife brought a wrongful death action against the manufacturer of the helmet decedent was wearing at the time of the fatal accident and the driver of the automobile who hit him. After plaintiff settled with the driver, the helmet manufacturer filed a third-party complaint against the driver seeking, *inter alia*, equitable apportionment of damages. The court found that the claim for equitable apportionment failed, in part, because the sole injury involved there, death, was indivisible. (97 Ill. App. 3d 610, 614.) It is entirely possible for the fact finder in the present case to find that the wound or wounds inflicted by the City was or were mortal, in which case the *Van Jacobs* rationale would apply. If, in contrast, in the instant controversy the initial damage inflicted was not mortal, but involves two distinct injuries which occurred at separate points in time, then simply because the second injury happened to be fatal would not by itself

bar an action for equitable apportionment. (See *Herrero v. Atkinson* (1964), 227 Cal. App. 2d 69, 38 Cal. Rptr. 490; and *Rezza v. Isaacson* (1958), 13 Misc. 2d 794, 178 N.Y.S.2d 481, both of which involved wrongful death actions.) The resolution of this issue must also await trial.

The Hospital argues that the circuit court's order striking the prayers for punitive damages against it should be read to encompass striking of the allegations of wilful and wanton misconduct against it as well. This argument is without merit. An order must be interpreted within the context of the motion through which it was initiated. (*Comet Casualty Co. v. Schneider* (1981), 98 Ill. App. 3d 786, 793, 424 N.E.2d 911, *appeal denied* (1981), 85 Ill. 2d 577; *Ferracuti v. Ferracuti* (1975), 27 Ill. App. 3d 495, 498, 326 N.E.2d 556.) Defendant's motion to strike plaintiff's prayer for punitive damages was based, in part, upon the contention that punitive damages are not recoverable under a survival action nor generally under a common law action for wrongful death, relying on *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 330 N.E.2d 509.[1] The prayer for punitive damages was not striken because the complaint did not properly plead wilful and wanton misconduct. Whether, as the Hospital argues, since this prayer was striken there is no reason for plaintiff to attempt to sustain the greater burden of proving wilful and wanton misconduct is entirely conjectural and, in any event, has nothing to do with the City's counterclaim and the issues raised therein.

The Hospital finally contends that the counterclaim[2] does not properly plead wilful and wanton misconduct against it, relying on *Pendowski v. Patent Scaffolding Co.* (1980), 89 Ill. App. 3d 484, 492-93, 411 N.E.2d 910, among other authorities. It cannot be said that the allegations in this count, expressly incorporated into the City's

---

[1] *Cf. National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 383 N.E.2d 919; *Froud v. Celotex Corp.* (1982), 107 Ill. App. 3d 654, 437 N.E.2d 910, *appeal allowed* (1982), 91 Ill. 2d 569.

[2] The counterclaim incorporated that part of count III of the underlying complaint alleging that the Hospital wantonly failed: to provide human, life-saving care under the circumstances which they knew or should have known were needed had it desired to alert itself; to take appropriate emergency measures after being advised that decedent was in critical condition; to alleviate a known blood loss emergency to decedent; to heed the admonition of police, physicians and lay persons of the emergency need for blood transfusions; to render the best hospital and medical care in contravention of its own bylaws accreditation standards and custom in the Chicago area; to afford critically ill patients qualified specialists to handle emergencies; to inform the delivering police that its staff was either unqualified to handle blood loss problems or was unable to do so; and, to comply with the Hospital Licensing Act.

counterclaim, fail to establish the Hospital's reckless disregard for plaintiff's safety. (*Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 377-78, 437 N.E.2d 774.) By virtue of the need to closely examine the facts of each case, the City should be permitted to present evidence in support of its allegations of wanton malfeasance. *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462.

▪ A pleading must show only the possibility of recovery, not an absolute certainty, and it should not be dismissed unless it appears that the pleader in no event would be permitted to recover. (*Miller v. DeWitt* (1967), 37 Ill. 2d 273, 287-88, 226 N.E.2d 630; *Badorski v. Commonwealth Edison Co.* (1980), 89 Ill. App. 3d 494, 496, 411 N.E.2d 924.) Since the City's counterclaim against the Hospital demonstrates the possibility for recovery upon the theory of equitable apportionment, its dismissal was erroneous and must be reversed and the cause remanded with directions to reinstate the City's counterclaim.

For the foregoing reasons, we reverse and remand.

Reversed and remanded.

DOWNING and PERLIN, JJ., concur.