WILLIAM G. BRESLAND, Plaintiff-Appellee, v. IDEAL ROLLER & GRAPHICS COMPANY, Defendant-Appellant and Third-Party Plaintiff–Appellant (Taft Contracting Company, Third-Party Defendant–Appellee).

First District (3rd Division) No. 84—2032

Opinion filed November 26, 1986.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom and Shaun McParland, of counsel), for appellant.

Tom Leahy, of Chicago (Michael W. Cusick, of counsel), for appellee William G. Bresland.

Schaffenegger, Watson & Peterson, Ltd., of Chicago (Jack L. Watson, of counsel), for appellee Taft Contracting Company.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Defendant, Ideal Roller & Graphics Company (Ideal), appeals from a jury award of $16,000 in punitive damages to plaintiff, William G. Bresland, who was injured when sparks from an acetylene cutting torch ignited Naptha-soaked rugs used by plaintiff to clean heavy machinery at defendant's plant. Ideal, as third-party plaintiff, also appeals from a judgment entered in favor of the third-party defendant, Taft Contracting Company (Taft), in Ideal's action for contribution from Taft.

Plaintiff was a millwright foreman for Taft and, in this capacity,

erected, installed, dismantled, and repaired precision machinery. On May 15, 1979, plaintiff was assigned to work at Ideal to examine and repair its rubber mill. George Gaydula, another Taft employee, was to work under plaintiff's supervision and direction on this job.

John Curtin met plaintiff when he arrived at the plant. Curtin was the Ideal employee responsible for the repair job which plaintiff and Gaydula were to perform. Curtin took them to the machinery and thereupon explained the problems with it. In order to better inspect the gears on the machinery, plaintiff removed a large steel cover. Two or three other Ideal employees were in the room when he inspected the gears, and plaintiff testified that he spoke to them about the problems with the machinery. After replacing one of the gears, plaintiff and Gaydula found that the machine continued to have problems. Plaintiff then directed Gaydula to use an acetylene cutting torch on the rubber-mill platform so that they could better reach the gears. When Gaydula began to use the torch, plaintiff was still conversing with the Ideal employees.

Plaintiff subsequently removed the machine's bearing cover but could not see the bearings because of the grease covering them. The parties presented conflicting testimony as to how plaintiff ultimately obtained the solvent he needed to clean the bearings. Plaintiff testified that some Ideal employees indicated they would get the solvent for him, but he could not identify them by name. He did recall that one person was wearing a tie. According to plaintiff, this person then requested another employee to get the solvent, but plaintiff again could not identify that employee.

Curtin testified that he told plaintiff to see an Ideal foreman, Bob Montgomery, for safety solvent used for cleaning electric motors. Curtin further indicated that the particular solvent to which he referred was a nonflammable one. Montgomery stated that no one had requested that he assist plaintiff or provide him with solvent. He was not aware of whether there was nonflammable solvent available in the building where plaintiff was working, and he did not know where any such solvent was stored. He indicated that the Naptha stored in the building was clearly marked in a red five-gallon can with a safety lock.

After plaintiff had obtained the Naptha, he dipped a rag into it, wrapped the rag around his hand, and started to clean the bearings. Plaintiff's right hand caught fire within seconds, apparently resulting from a spark emanating from the cutting torch used by Gaydula. Although plaintiff testified that he did not know Gaydula was using the torch at that time, Gaydula testified that plaintiff was 8 or 10 feet away with no obstructions between them.

Robert Baddeley, an engineer employed by Ideal, and Bruce Hubbard, vice-president of research at Ideal, testified that they were in the room at the time of the incident. Both men had seen Curtin previously speak to plaintiff, but neither heard the conversation. Each man stated that he did not know that plaintiff was using a flammable solvent. Baddeley indicated that it was Ideal's informal policy that flammable solvents were not to be used near an open flame. Hubbard stated that there also was an informal company policy that flammable solvents were not to be used for cleaning purposes. Plaintiff admitted at trial that he did not ask what the solvent was or whether it was of a flammable nature.

Martin Glavach, an Ideal employee and the operator of a calendar machine located next to the rubber mill, testified that plaintiff spoke to him about cleaning solvent. He stated that he brought plaintiff an empty, black five-gallon bucket but did not get the solvent for him. Glavach additionally testified that he told plaintiff that the cleaning solvent stored in the building was Naptha, which was dangerous and flammable.

Plaintiff was taken to a hospital emergency room where he was diagnosed to have second degree burns as a result of the accident. Plaintiff saw the doctor for several follow-up appointments. The doctor's notes indicated that, on June 7, 1979, plaintiff's wounds were completely healed and he was permitted to return to work.

On May 1, 1981, plaintiff filed a complaint against ideal, seeking recovery for his injuries, alleging that Ideal was negligent in supplying him with a highly flammable cleaning solvent. On March 7, 1983, Ideal filed a two-count third-party complaint against Taft, seeking recovery under the theories of active/passive negligence and contribution. Ideal alleged that Taft was negligent in failing to instruct its employees on the proper use of solvents, in allowing its employee to weld in close proximity to where Naptha was being used by a co-worker, and by failing to provide safe or adequate tools or equipment for its employees to perform their work.

On the third day of trial, April 18, 1984, plaintiff made an oral motion for leave to file an amended complaint alleging wilful and wanton misconduct against Ideal. Over Ideal's objections, the trial court permitted plaintiff to file such a complaint.

At the close of plaintiff's case in chief and at the close of all the evidence, Ideal moved for a directed verdict on the ground that plaintiff failed to produce sufficient evidence to establish liability. The trial court denied both motions for a directed verdict. The court, however, granted plaintiff's motion to direct liability against Ideal on the negli-

gence count but not on the wilful and wanton count. It also denied Ideal's motion for a directed verdict on the issue of plaintiff's comparative negligence. At the close of all the evidence, Taft moved for a directed verdict on both counts of the third-party complaint. The court granted the motion as to the active/passive negligence count but permitted the contribution count to stand.

The jury found Ideal liable on both the negligence and wilful and wanton counts. It assessed plaintiff's damages on the negligence count at $15,000, which, after finding plaintiff's contributory negligence to be 20%, was reduced to $12,000. On the wilful and wanton count, the jury assessed $20,000 in damages against defendant. After finding that plaintiff also contributed to his injuries in this regard, the jury reduced the amount to $16,000. The jury also found for Taft and against Ideal in the contribution action.

On appeal defendant Ideal contends that (1) the trial court abused its discretion in allowing plaintiff to add a wilful and wanton count on the third day of trial; (2) the evidence did not support a finding of wilful and wanton misconduct by Ideal as a matter of law, and the trial court erred in failing to enter judgment in its favor; (3) it is entitled to a new trial because the jury verdict was against the manifest weight of the evidence, improper jury instructions were given, and attorney misconduct prejudiced the jury; (4) because plaintiff, who was Taft's agent, was found to be wilful and wanton and to have proximately caused his injuries, the trial court erred in entering judgment in favor of Taft in the contribution action; and (5) erroneous, confusing, and inconsistent jury instructions were submitted to the jury in the contribution action.

■■ ■ Defendant initially contends that the trial court abused its discretion when it permitted plaintiff, on the third day of trial, to amend his original complaint. Defendant urges this court to strike count II of the amended complaint and vacate the judgment entered.

Section 2—616 of the Code of Civil Procedure provides that "[a]t any time before final judgment amendments may be allowed on just and reasonable terms." (Ill. Rev. Stat. 1983, ch. 110, par. 2—616(a).) Whether a motion to amend pleadings is granted or denied is left to the sound discretion of the trial court. (*Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 745, 474 N.E.2d 1274; *Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 858, 392 N.E.2d 591.) The primary consideration in this determination is whether the amendment will further the interests of justice. (*Schenker v. Chicago Title & Trust Co.* (1984), 128 Ill. App. 3d 488, 491, 470 N.E.2d 1264; *United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 857, 387 N.E.2d

1272.) Factors to be considered include whether surprise or prejudice to the nonpleading party would result from the amendment. *Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 474 N.E.2d 1274; *Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 230, 359 N.E.2d 745.

■■ ■ Defendant complains that plaintiff's motion was untimely, that the testimony did not support such a count, and that defendant was prejudiced because of exposure to potentially uninsured liability. We disagree. Amendments during trial generally are not permitted if they concern matters about which the pleader had knowledge when the original pleading was filed and for which no acceptable reason is offered for not having included them at that time. (*Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 474 N.E.2d 1274; *First National Bank & Trust Co. v. Sousanes* (1978), 66 Ill. App. 3d 394, 396, 384 N.E.2d 30.) Here plaintiff indicated that the amendment was based on information which came out at trial, in particular, testimony adduced on the morning the motion was made. Further, Illinois law provides that a pleading can be amended at any time, before or after judgment, to conform the pleadings to the proofs. (Ill. Rev. Stat. 1983, ch. 110, par. 2—616(c).) Plaintiff moved to file amended pleadings prior to the time defendant began to present its case. Plaintiff essentially had presented its entire case, and any additional evidence did not relate to the wilful and wanton count. Defendant, therefore, was not required to conduct further discovery or investigation because of the amendment. Although defendant claims that prejudice resulted from a continuance of only one business day to examine possible uninsured liability and determine if outside counsel was necessary, the record reveals no showing of prejudice. Even though defendant argued that it had no meaningful opportunity to obtain its own counsel, defendant was not heard to complain on this point when the trial resumed, and it did not request additional time for this purpose. Therefore, we believe that the trial court did not abuse its discretion in allowing plaintiff to add the wilful and wanton count.

■■ ■ Defendant next contends that the evidence presented was not sufficient to support a finding of wilful and wanton misconduct as a matter of law and that the trial court erred in failing to enter judgment for Ideal. Alternatively, defendant contends that the jury verdict on the wilful and wanton count is against the manifest weight of the evidence and, therefore, must fail.

Whether a party's conduct rises to the level of wilful and wanton misconduct generally is a question of fact to be determined by the jury. (*Stamat v. Merry* (1979), 78 Ill. App. 3d 445, 449-50, 397 N.E.2d 141.) However, where the evidence, viewed in the light most favorable to

the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand, the court may grant a directed verdict. 78 Ill. App. 3d 445, 450, 397 N.E.2d 141.

■■ We agree with the trial court that the evidence here, viewed in the light most favorable to plaintiff William Bresland, does not overwhelmingly favor the movant Ideal. Two Ideal employees, each of whom had worked for defendant for 24 years, testified that they had never used any cleaning solvent other than Naptha, and one stated that he would not even know where another type solvent would be stored. Moreover, with the exception of the one corporate officer who testified that he told plaintiff to see a foreman about obtaining a safety solvent, there was no evidence presented that nonflammable solvent was available in the plant on the day in question.

Ideal argues that a defendant's conscious disregard for the safety of others must be established to support a finding of wilful and wanton misconduct. (See *Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583, 69 N.E.2d 293; *Holda v. County of Kane* (1980), 88 Ill. App. 3d 522, 535-36, 410 N.E.2d 552; *Turner v. Commonwealth Edison Co.* (1976), 35 Ill. App. 3d 331, 337, 341 N.E.2d 488.) Defendant further adds that, where such misconduct is to be attributed to a corporation for its employee, the "complicity rule" must be satisfied. Ideal cites *Pendowski v. Patent Scaffolding Co.* (1980), 89 Ill. App. 3d 484, 488, 411 N.E.2d 910, for the proposition that:

> "When a corporate master is to be held vicariously liable for the actions of its employees, punitive damages for wilful and wanton conduct will be available only if a superior officer of the corporation ordered, participated in, or ratified the 'outrageous misconduct' of the employee."

Defendant's reliance on the rule as set forth in *Pendowski* is misplaced in the instant situation. Here defendant's officers testified that there was an informal company policy that flammable solvents were not to be used near an open flame. They also testified that they were present where a flammable solvent was being used near an acetylene cutting torch. Further, despite their testimony that they were unaware that a flammable solvent was being used, the officers are held to have constructive knowledge of the lack of nonflammable solvents within the plant. (*Turner v. Commonwealth Edison Co.* (1976), 35 Ill. App. 3d 331, 341 N.E.2d 488.) Therefore, the jury could reasonably conclude that the officers either participated in or ratified the actions of their employee involved with plaintiff in obtaining the cleaning solvent.

■■ We therefore find that the evidence here was sufficient to present a question of fact to the jury and that the trial court properly

refused to direct a verdict in defendant's favor. Further, the evidence adduced at trial supported a finding of wilful and wanton misconduct, and the jury's verdict was not against the manifest weight of the evidence.

■■ Defendant also contends that the trial court's instructions to the jury regarding the principles of law governing wilful and wanton misconduct were improper and require reversal of the jury verdict. Plaintiff's instruction No. 17 was a version of Illinois Pattern Jury Instruction, Civil, No. 50.11 (2d ed. 1971) (hereinafter IPI Civil 2d), modified as follows:

> "The defendants are corporations and can act only through their officers and employees. Any act or omission of the officer or employee within the scope of his employment is the action or omission of the defendant corporations.
>
> Provided, however, that wilful and wanton conduct of Plaintiff, WILLIAM G. BRESLAND, if any, is not attributable to third party TAFT in the action for contribution by Defendant IDEAL against Defendant TAFT."

Again relying on *Pendowski v. Patent Scaffolding Co.* (1980), 89 Ill. App. 3d 484, 489, 411 N.E.2d 910, defendant argues that this instruction was improper because it imputed liability for *any* act or omission of an Ideal employee, rather than only for an act ordered by, participated in, or ratified by an officer.

Although defendant's contention is meritorious, it nevertheless must fail because defendant did not properly preserve for review its objection to the instruction. In order to preserve an objection to an instruction, the objection must be set forth with specificity so that the trial court can be advised of the specific nature of the objection before it makes a ruling. (58 Ill. 2d R. 239(b); *Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 550, 475 N.E.2d 817, citing *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 387, 385 N.E.2d 664.) Despite the fact that defendant set forth its objection in its post-trial motion, the objection made at trial during the jury-instruction conference was vague and ambiguous. Defense counsel objected to plaintiff's proffered instruction because it would "highlight certain testimony." He did not identify the testimony to which he referred; therefore, any inferences which could be made, even if defendant's assertion were correct, would be highly speculative. We thus find that defendant's objection was not properly preserved for review, and we will not order a new trial on this basis.

■■ Defendant next complains that improper conduct by plaintiff's counsel during examination of defendant's employees and during

closing argument unduly prejudiced and inflamed the jury members and denied Ideal a fair trial. When arguing a case to the jury, counsel is allowed broad latitude to draw reasonable inferences and conclusions from the evidence. (*Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042, 1049, 460 N.E.2d 464; *Crump v. Universal Safety Equipment Co.* (1979), 79 Ill. App. 3d 202, 213, 398 N.E.2d 188.) A reviewing court generally will not find reversible error due to improper comments of counsel unless a defendant has been substantially prejudiced by such comments. (*Soto v. E. W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 892, 452 N.E.2d 572.) Additionally, where the trial court has promptly sustained an objection and instructed the jurors to disregard particular comments, this generally has been viewed as curing any prejudice that could result. (*People v. Baptist* (1979), 76 Ill. 2d 19, 30, 389 N.E.2d 1200.) Furthermore, if the trial was fair as a whole and the evidence was sufficient to support the jury's verdict, a case will not be reversed upon review. See *Nunley v. Mares* (1983), 114 Ill. App. 3d 779, 790, 449 N.E.2d 864, citing *Pumo v. Foltynewicz* (1980), 82 Ill. App. 3d 178, 181, 402 N.E.2d 900.

■■ We have examined the trial record, with particular attention to the instances of alleged improper comments by plaintiff's counsel. We find that the court promptly sustained objections and, in some instances, admonished plaintiff's counsel and instructed the jury to disregard such comments. In others, the court found that counsel's comments were reasonable inferences from the evidence and overruled the objections made. Although some of counsel's comments perhaps may be viewed as improper, we find that defendant was not so prejudiced by either the individual or cumulative effect of the comments to have been denied a fair trial. As discussed previously, there was sufficient evidence to support a finding of wilful and wanton misconduct on the part of defendant, and we believe the trial as a whole was a fair one.

■■ Ideal, as third-party plaintiff-appellant in a contribution action against Taft, contends in its brief that the trial court erred when it entered judgment in favor of Taft. Ideal initially argues that, because the jury found that 20% of plaintiff's injuries were proximately caused by the negligent and wilful and wanton conduct of plaintiff as Taft's agent, judgment should be entered in its favor for 20% contribution from Taft. At oral argument, however, counsel for Ideal noted that an Illinois Supreme Court case decided since the filing of its brief may have rendered moot its argument.

In *J. L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 117-18, 483 N.E.2d 273, the court indicated that where the conduct of a plaintiff has al-

ready been a factor in the reduction of the original award to that party, the same conduct cannot then be asserted as the basis of a contribution action seeking to reduce the liability of the defendant/third-party plaintiff for the same acts. Therefore, on this basis, Ideal cannot obtain 20% contribution from Taft as plaintiff's employer for the same conduct for which the award already was reduced.

Ideal further contends, however, that Taft should have been found liable for its own independent acts of misconduct which would require that Taft pay its *pro rata* share of damages to Ideal in the contribution action. ideal argues that the trial court thus erred when it allowed an instruction to be given to the jury which effectively precluded contribution by Taft if the jury members initially found Ideal guilty of wilful and wanton misconduct.

Taft's non-IPI instruction No. 5, given over the objection of Ideal, stated:

> "If you decide Ideal Roller & Graphics Corp. [*sic*] is guilty of wilfull [*sic*] and wanton misconduct, you will have no occasion to consider the question of reimbursement."

Ideal contends that, as a matter of law, the instruction prevented the jury from considering contribution by Taft on both the negligence and wilful and wanton counts. Ideal further argues that, because Taft's conduct was a proximate cause of the plaintiff's injuries, such an instruction is also inconsistent with the purpose of the Contribution Among Joint Tortfeasors Act (Contribution Act or Act) (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*). Taft, in contrast, maintains that it is not the intention of Illinois law to permit a party found guilty of wilful and wanton misconduct to come into court and obtain contribution, whether it be for compensatory or punitive damages.

We agree with Ideal that the court's instruction precluded the jury's consideration of contribution by Taft once it found wilful and wanton conduct on the part of Ideal. Whether, under the Contribution Act, a defendant so adjudged can come before the court in a contribution action is an issue which seldom has been addressed by Illinois courts.

In *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849, the Illinois Supreme Court announced that the doctrine of contribution was applicable in Illinois for causes of action arising out of occurrences on and after March 1, 1978. Although *Skinner* was a products liability action alleging strict liability, the court indicated that the decision was applicable to third-party complaints pleaded in negligence as well. Much of the discussion in the opinion centered around an 18th-century English case, *Merryweather*

*v. Nixan* (1799), 101 Eng. Rep. 1337, which formed the basis of the rule against contribution among tortfeasors. The *Skinner* court noted, however, that the rule against contribution in *Merryweather* was limited to wilful or intentional wrongdoers, as the definition of the term "tort" applied only to such parties at the time of the decision. (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 12-13, 374 N.E.2d 437.) The majority did not explicitly state whether or not the no-contribution rule would continue where these wrongdoers were involved. However, Justice Ward, in his dissent, explained that such torts were not within the rationale of the newly announced doctrine permitting contribution in Illinois and suggested that the rule denying contribution under those circumstances should be retained. 70 Ill. 2d 1, 19, 374 N.E.2d 437.

Subsequent to the *Skinner* decision, the Illinois legislature enacted the Contribution Act, effective September 14, 1979. The Act applies to causes of action arising on or after March 1, 1978. (Ill. Rev. Stat. 1979, ch. 70, par. 301.) Section 2 of the Act merely provides that there is a right of contribution among two or more persons who are subject to liability in tort arising out of the same injury. (Ill. Rev. Stat. 1979, ch. 70, par. 302(a).) The Act is silent as to the types of conduct giving rise to liability. Nevertheless, it generally has been recognized that the legislature intended to codify the *Skinner* decision when it enacted the Contribution Act. We therefore believe that intentional tortfeasors still, as at common law, have no right to contribution. It is with this in mind that we address the potential application of the Act to third-party plaintiffs found liable for wilful and wanton misconduct.

■■■ Wilful and wanton misconduct is conduct which is performed either intentionally or with a reckless disregard for the safety of others. (*Hocking v. Rehnquist* (1969), 44 Ill. 2d 196, 201, 254 N.E.2d 515, citing *Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583, 69 N.E.2d 293.) In *Neuman v. City of Chicago* (1982), 110 Ill. App. 3d 907, 443 N.E.2d 626, the court indicated that although an intentional tortfeasor has no standing to invoke equity and request that the court shift its burden of loss to another, one liable merely for reckless rather than intentional misconduct would have standing to maintain an action for equitable apportionment. (110 Ill. App. 3d 907, 910-11, 443 N.E.2d 626.) In a more recent case, the Fifth District of this court specifically addressed the question before us of whether a third-party plaintiff found liable in the original action for wilful and wanton misconduct could obtain reimbursement from a third-party defendant in a contribution action. In *Pipes v. American Logging Tool Corp.* (1985), 139 Ill. App. 3d 269, 274-75, 487 N.E.2d 424, the court held

that a jury's verdict assessing partial contribution in favor of the third-party plaintiff was not irreconcilable with a finding of wilful and wanton misconduct on the part of that party. The *Pipes* court made no distinction, as did *Neuman*, regarding the types of conduct encompassed by the label "wilful and wanton." *Pipes* did emphasize, however, that the third-party plaintiff in that case was seeking contribution from one whose conduct also caused the damages incurred and was not, therefore, attempting to shift its burden of loss. 139 Ill. App. 3d 269, 274, 487 N.E.2d 424.

 In our view, the type of conduct which typically has been described as wilful and wanton is so close to that of intentional misconduct that a party found liable on that basis should not be able to obtain contribution under the Contribution Act. We are not bound to follow the decisions of coordinate courts and thus decline to do so in the instant situation. See *Muller v. Health & Hospital Governing Com.* (1982), 106 Ill. App. 3d 383, 385-86, 436 N.E.2d 26, *rev'd on other grounds* (1983), 93 Ill. 2d 543, 447 N.E.2d 417; *Glasco Electric Co. v. Department of Revenue* (1980), 87 Ill. App. 3d 1070, 1071, 409 N.E.2d 511.

Wilful and wanton misconduct has been described as conduct which "usually approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." (See Restatement (Second) of Torts sec. 886A, comment *k* (1979).) Such conduct also has been described as follows:

> "Lying between intent to do harm, which *** includes proceeding with knowledge that the harm is substantially certain to occur, and the mere unreasonable risk of harm to another involved in ordinary negligence, there is a penumbra of what has been called 'quasi intent.' To this area the words 'wilful,' 'wanton,' or 'reckless' are customarily applied ***. *** They apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended." W. Prosser, Torts sec. 34, at 184 (4th ed. 1971).

Illinois courts similarly have recognized the heightened state of mind required for a finding of wilful and wanton misconduct. In *Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583, 69 N.E.2d 293, the supreme court stated:

> "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, af-

ter knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care."

(See also *Hocking v. Rehnquist* (1969), 44 Ill. 2d 196, 201, 254 N.E.2d 515.) A state of mind different from that needed in ordinary and gross negligence is required and can be found where aggravating circumstances are present, such as where there is "a conscious and deliberate disregard for the rights or safety of others." (*Morrow v. L. A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 1095, 468 N.E.2d 414, *rev'd on other grounds* (1986), 112 Ill. 2d 87, 492 N.E.2d 181.) We note that where an act is performed with intent or with a conscious disregard or indifference for the consequences when the known safety of other persons is involved, even constructive knowledge concerning those persons is sufficient for a finding of wilful and wanton misconduct. *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 429-30, 412 N.E.2d 447, citing *Myers v. Krajefska* (1956), 8 Ill. 2d 322, 328-29, 134 N.E.2d 277.

Additionally, when a jury makes an assessment of punitive damages, that assessment is based on the net worth of the particular defendant and not upon consideration regarding a third-party defendant. A jury finding that a specific amount would sufficiently punish and deter a defendant from further wilful and wanton misconduct would be of diminished effect if that party could obtain contribution. Further, under such circumstances, third-party defendants potentially could be required to contribute an amount which exceeds their ability to pay. J. Ghiardi and J. Kirchner, Punitive Damages sec. 16.06 (1985).

Based on these considerations, we believe that the public policy of Illinois does not support a holding that would permit one found liable for punitive damages based on wilful and wanton misconduct to come into court and ask for reimbursement under the Contribution Act.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P.J., and WHITE, J., concur.